## The People, on relation of A. H. Schmittdiel, v. The Board of Auditors of Wayne County.

*Services rendered for counties within meaning of the constitution.* — The provision of the constitution (*Art.* 10, *Sec.* 10,) that "the Board of Supervisors, or, in the County of Wayne, the Board of County Auditors, shall have the exclusive power to prescribe and fix the compensation for all services rendered for, and to adjust all claims against, their respective counties, and the sum so fixed or defined shall be subject to no appeal," does not embrace those cases where charges have been laid on counties simply as a fair way of apportioning the public debt, [and where no benefit accrues to them in their corporate capacity.

Where the law has, in such cases, pointed out any other mode of adjustment or regulation of salaries or compensation, than that by the County Boards, the latter have no right to review, but must allow and pay them as thus adjusted.

*Clerk of Police Court of Detroit — his services not rendered for the county.* — The services of the clerk of the Police Court of the City of Detroit are not "services rendered for Wayne County," within the meaning of Section 10, Article 10 of the constitution, and, therefore, the provision of the statute, (*Laws of* 1863, *p.* 332,) empowering the Common Council to prescribe the salary of such clerk, is not in conflict with said section of the constitution, and is valid.

*Heard April 27. Decided May 2.*

13 MICH. — P.

THE PEOPLE *v.* THE BOARD OF AUDITORS OF WAYNE.

Motion for a mandamus.

The facts appear in the opinion of the Court.

*J. Logan Chipman*, for the motion.

*G. V. N. Lothrop*, contra.

CAMPBELL J.:

By the Laws of 1863, *p.* 332, the Common Council of Detroit were empowered to appoint a clerk to the Police Court, and to prescribe his salary, which was made payable out of the County Treasury, in the same manner with that of the Police Justice — that is, to be allowed, raised and paid by the Board of Auditors as other county charges. The County Auditors refuse to pay the relator's salary, (fixed by the Council at $1,000,) on the ground that no one can fix its amount, under the constitution, but themselves. The clause of the constitution relied on for this interpretation is Article 10, Section 10, which declares that "the Board of Supervisors, or, in the County of Wayne, the Board of County Auditors, *shall have the exclusive power to prescribe and fix the compensation for all services rendered for, and to adjust all claims against, their respective counties,* and the sum so fixed or defined shall be subject to no appeal."

The question presented is, whether the services rendered by this clerk are "services rendered for Wayne County," within the meaning of this clause.

The office of the Police Court is to perform, within the City of Detroit, the duties performed by Justices of the Peace in townships, in the examination and trial of offenders against the criminal laws of the State, the Police Justice and the clerk sharing between them the duties elsewhere performed by Justices alone. They are in no sense county officers; they are rather city officials, so far as place is concerned. Their duties relate entirely

to the enforcement of criminal law, against offenders charged with violating the peace and dignity of the State, whose offences are committed in Detroit. The only circumstances which connect these officers with the county, are the facts that offences are tried in counties, and that the officers are paid by the counties. But otherwise, the counties are no more directly affected than the State at large. They have no control over the appointment or conduct of justices, nor over the prosecutions themselves, which are all conducted in obedience to State laws, and in which the county, as a public body, has no voice whatever.

Upon an examination of our State polity, before and since the adoption of the new constitution, it will be found that many charges have been laid on counties, as such, where no benefit accrued to them in their corporate capacity, but where it was, doubtless, deemed a fair way of apportioning the public expenses. It would be difficult to perceive what advantage a county derives from the civil proceedings between parties in the Courts of Justice, or why, if there be any advantage, the services of the Judge, as well as of jurors and witnesses, should not be deemed services rendered for the counties where they respectively sit. It is an advantage to have justice accessible to all, and to have evil-doers punished, but acts which do not affect the interests and security of the public at large have not usually been classed as crimes, (although the distinctions are somewhat arbitrary,) and the advantages in all these cases result to the community generally. We feel very sensibly the difficulty of classifying the services rendered to counties, as contradistinguished from those which, although charged on them, are not rendered for their peculiar benefit; but the practical construction has, from the beginning, made judicial proceedings an exception, or, rather, regarded them as not coming within the former class. The fees

of County Clerks, of Sheriffs, of jurors, and of witnesses, have been fixed by law from time to time. The services of the Recorder of Detroit, whose criminal jurisdiction covers the same cases examinable originally by the Police Court, are paid out of the State Treasury. Judges of Probate have a limit placed upon their salaries, which are payable out of the County Treasury, but not under the uncontrolled discretion of the county authorities. Justices of the Peace, in civil and [criminal cases, are paid by fees, and these are not only fixed by law, but in criminal cases are payable by the county. Most of the county officers perform services officially, for which they receive fees from private parties. The Register of Deeds, Clerks and Sheriffs derive their chief income from these sources, although the two latter officers have little to do except in connection with the administration of justice. And, as before suggested, if the county is interested in criminal proceedings, it is no less so in civil. In like manner County Treasurers, whose duties are more directly connected with the interests of the counties, are entitled to a per centage on moneys received by them independent of the county boards, as compensation for services regarded as rendered really to the State; while for services to the county their compensation must be prescribed by those bodies. These legal provisions are so numerous and so familiar that we do not deem it necessary to make citations on the subject.

There are, on the other hand, many services rendered by county officers, and perhaps by some others, which have a direct bearing on county interests. Those services rendered by Clerks and others in keeping records, and attending meetings, and drawing and certifying papers relating to county business, are of this character. Such are also many, and perhaps most, services of the County Treasurer. Other cases will readily suggest themselves. The practical construction which has fixed or limited

compensation in so many instances, as well where chargeable on the county as in other cases, is based upon tangible reasons and good sense. It would be anomalous, to say the least, if the county authorities could control the policy of the State within their limits by regulating or practically withholding the means of employing the needful agencies. We cannot regard the construction which has prevailed, as in the least degree conflicting with the fair meaning or plain terms of the constitution. Where the law has in these cases pointed out any other mode of adjustment, or regulation of salaries, or compensation, than that by the County Boards, the latter have no right to review them, and must allow and pay them as they have been already legally ascertained and liquidated. The case of *The People v. Supervisors of Macomb County*, 3 *Mich. R.*, 475, lays down the correct rule on this subject.

Where the subject is not within the exclusive control of the county officers, there is no constitutional provision which prevents the Legislature from placing the matter under the supervision of municipal bodies, as they have done in the present instance.

We think this a proper case for a mandamus. No costs, however, will be allowed, as the defence is in good faith, and the question a new and important one.

Cooley and Christiancy JJ. concurred.

Martin Ch. J. was absent.