COMMON COUNCIL OF THE CITY OF DETROIT v. ENGEL.

1. SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL LAW—LOCAL ACTS—REFERENDUM.

Act No. 322, Local Acts 1915, amending section 13 of Act No. 233, Laws 1869, entitled "An act relative to free schools in the city of Detroit," and raising the authorized rate of interest to be paid on school bonds in said city from four to six per cent., *held*, to be a local act and therefore unconstitutional, (1) in that it violated section 30, Art. 5, Const. 1909, in not containing a referendum clause and was never submitted to, or approved by, the electors of the school district; (2) in that a general act fixing the maximum rate of interest for school bonds for all school districts can be made applicable, rendering local legislation unnecessary.

2. SAME—POWERS OF LEGISLATURE.

Although, under the policy of this State, education belongs to the State, and the Constitution has turned all matters of education over to the legislature with broad powers of provision and control, *held*, such powers are subject to the limitations imposed by section 30, Art. 5, of the Constitution.

3. SAME—EMERGENCY—IMMINENT NECESSITY—STATUTES — APPEAL AND ERROR.

> The fact that there was no emergency or imminent necessity at the time the act was passed, more than two years ago, and that at that time this country was not at war, *held*, to preclude their consideration by the appellate court, even if the fact of their existence be conceded.

Certiorari to Wayne; Mandell, Williams, and Gilday, JJ. Submitted June 11, 1918. (Calendar No. 28,410.) Decided July 18, 1918.

Mandamus by the common council of the city of Detroit to compel George Engel, city controller, to prepare, countersign and transmit certain school bonds to the city treasurer in compliance with Act No. 322, Local Acts 1915. From an order granting the writ, defendant brings certiorari. Reversed.

*Edmund Atkinson* (*Divie B. Duffield*, of counsel), for plaintiff.

*Donnelly, Hally, Lyster & Munro* and *Walter C. McNiel*, for defendant.

STEERE, J. In this proceeding plaintiff filed its petition in the circuit court of Wayne county for a writ of mandamus to compel defendant in the performance of his prescribed official duties to prepare, countersign, and transmit to the city treasurer certain school bonds which plaintiff had authorized and negotiated at a rate of interest exceeding four per cent. per annum.

While in defendant's formal answer to an order to show cause other questions are raised, the direct and controlling reason for refusal involved and argued here is that the proposed issue of bonds authorized by plaintiff bore a rate of interest in excess of the limit fixed by law.

Whether the proposed rate of interest is forbidden depends upon the validity of Act No. 322, Local Acts 1915, purporting to amend section 13 of Act No. 233, Laws 1869, entitled "An act relative to free schools in the city of Detroit," which followed under the same title and was in effect a revision and elaboration of Act No. 70, Session Laws of 1842, under which the Detroit schools had previously operated. Section 13 of the 1869 act, amended 1903 (Act No. 392), relates to financing the Detroit school system and makes provision for raising by taxation and bonding, through co-operation of the school board and common council, necessary funds to equip and maintain the public schools of the city, with the restriction, however, that in case funds are raised by the issuance of bonds they shall "bear interest at a rate not exceeding four per cent. per annum." The only change in the law of 1869, as previously amended, made by said Act No. 322, is that bonds issued by authority of section 13 shall "bear interest at a rate not exceeding six per cent. per annum." This amending act contained no referendum, and defendant contends that it is essentially a local or special act, never submitted to or approved by the electors and promulgated in direct violation of the prohibition specified in section 30 of article 5 of the Constitution of 1909 that:

"The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

This law is both localized and specialized in its application to the amendment of an act stamped with those attributes. Aside from the contention of plaintiff that its relation to the subject of education oper-

ates to entirely relieve it, as a matter of law, from its local and special characteristics, it cannot in reason be regarded as otherwise than a local or special act, locally applicable only within the territorial boundaries of Detroit and especially directed to its school bonds. Neither from the nature of the subject can we conceive, judicially or otherwise, why a general act fixing the maximum rate of interest for school bonds cannot be made applicable, or any difficulty in formulating a law authorizing every public school district within the State to issue its bonds according to existing or provided methods and limitations, at a rate of interest not to exceed a specified per cent. per annum, either as a whole or by classification, if size, population, wealth, or other distinctions are shown to furnish a legal basis for such course.

That laws analogous in purpose and provisions to the one under consideration have, though dealing with education, generally been regarded as local and special both in litigation and legislation, is evidenced in many ways — by numerous decisions of this court, many briefs filed by able counsel in which they are so treated without controversy, and as a general rule by the legislature when dealing with them. The act of 1869 "relative to free schools in the city of Detroit," with its amendments, has been carried under that title as a local act in the volumes of local laws published "by authority" since its enactment. A concurrent resolution of the legislature of 1869 required that its acts should be printed and bound in two volumes, the first to contain all acts of a general nature, with joint and concurrent resolutions, the second volume to contain charters, etc., and other acts of a local character. This act relative to the schools of Detroit is in the second volume. In that year the case of *People* v. *Board of Education of Detroit*, 18 Mich. 409, was decided, and in an able opinion by Chief Justice COOLEY the posi-

tion under the general school laws of the State of specially provided city or municipal schools is discussed and declared. It was there said "the city of Detroit is one of the towns provided for by special legislation," the conclusion being reached that "at every point the general law is complementary to the special legislation, and is necessary to give it complete operation," and all parts of the general law "not inconsistent with the free school act apply to the city of Detroit." Referring to the fact that the law had just been "revised throughout" the court said, "but the city is still declared to be one school district in the same language we have quoted from the original act." In *Keweenaw Association* v. *School District*, 98 Mich. 437, referring to the enlarged powers given cities and villages in relation to their schools, it is said:

"These are conferred by special acts, and in all other particulars the primary school law controls the union school districts in such localities."

That the legislature regarded school legislation of this nature as local and special is indicated by the language found in other enactments. In Act No. 61, Pub. Acts 1911 (2 Comp. Laws 1915, § 5766), which provided for changing the boundaries of school districts, certain action is authorized "regardless of whether such school districts were formed  *  *  * or created under any local or special law."

Many similar authoritative utterances are to be found in the statutes and decisions of this State answering negatively the proposition of plaintiff's counsel that Act No. 322 of 1915 is not to be regarded as a local or special act as either term is generally used and legally construed, unless it can be said some provision in the Constitution of 1909 expressly or by implication puts the legislature above and beyond constitutional limitations when dealing with education.

As counsel point out, it was early said and has been consistently held, that under the policy of this commonwealth education belongs to the State, and the Constitution has turned all matters of education over to the legislature with broad powers of provision and control. Cases may be pointed out where it is indicated that certain provisions of the Constitution in other articles dealing with subjects foreign to "education," which is in an article by itself, are not always regarded as a limitation upon the legislature in educational matters, but we cannot find that this court has ever held, or, intentionally at least, used language indicating that the legislature, when enacting laws upon the subject of education, is endowed with powers beyond the limitations of those conferred in the very article of the Constitution which created it as one of the departments of State government. Without the Constitution which the people in their sovereign power have ordained and established as the form of government for the State, delineating in it certain first principles of our fundamental laws, there would be no legislature or other State governmental departments as they now exist. In appropriate sequence, following the preliminary articles relative to boundaries and seat of government, declaration of rights and elective franchise, the Constitution lays the foundation for and adopts a scheme or form of State government dividing its powers into three departments, and in the three succeeding articles separately provides for and defines in general terms the duties and powers of each with their limitations, first taking up the legislative department, in article 5, and vesting its powers in a legislative body composed of a senate and house of representatives, whose qualifications, field of action, duties and governmental limitations are then outlined. This article dealing directly with the general powers of the legislature, without reference

to or exception of any particular subject of legislation, declares in section 30 the prohibition against local or special legislation quoted. Having next in sequence provided for and defined the powers vested in the executive and judicial departments, the Constitution proceeds to deal with various other subjects of governmental concern in separate articles—such as "local government," "finance and taxation," "education," "corporations," "eminent domain," etc. To whatever extent the provisions of those articles may affect each other, we find no such qualifications in any of them as override the plain and comprehensive prohibition in section 30 of article 5 dealing directly with the general powers of the legislative department.

While it can with truth be broadly said that in its chief essentials the Constitution has committed the whole subject of education to the legislature, that statement is qualified to a degree by direct mandates in the article on "education" and no exception appears in that article or elsewhere in the Constitution providing that the legislature in enacting laws upon that subject can ignore the requirements and limitations prescribed in the article dealing directly with the legislative department. Plaintiff's contention carried to its logical conclusion places the legislature in matters of education outside the pale of all such mandates and restrictions. In *Burton* v. *Koch,* 184 Mich. 250, cited by plaintiff, where numerous cases are referred to, "upon the point that the legislature under the Constitution has substantially complete control over school districts," it is not said and cannot be construed as meaning that those plenary powers, though recognized as broad and comprehensive, are independent of express constitutional limitations, for it is said later in the opinion of the act under consideration, which relates to education:

"The court has nothing to do with the wisdom of

this legislation. The legislative power, with certain constitutional limitations, is vested elsewhere."

It cannot in reason be otherwise than that all powers of the legislature, whatever they may be, are, under and by virtue of the Constitution, subject to general constitutional mandates and limitations imposed on legislation without reservation.

In the official address issued by the constitutional convention to the people of the State explaining proposed changes in the Constitution and the reason for each, as the law required, it is said of the inhibition this act disregards that:

"It is intended to eliminate the vast volume of local legislation which has burdened the legislature in recent years and in many instances brought discredit upon it. * * * It will not only relieve the legislature, but will also remove one of the greatest sources of evil in modern legislative bodies."

Prepared and presumably adopted with such intent and purpose the generalized negative mandate against any local or special legislation except as defined, without attempt to enumerate any particular subjects of legislation which are prohibited, or excepted, indicates an expansion rather than restriction of the scope of limitation, to the exclusion of implied exceptions. *Anderson* v. *Cloud County*, 77 Kan. 721.

This very question of local legislation as applied to education was under consideration in the constitutional convention and debated (Vol. 1, page 193, Cons. Conv. Debates). Had it been the sense of the convention that so important subject as education should be excepted from the inhibition of section 30, it could, and presumptively would, have been so provided in unequivocal terms. So far as a failure to do so after the attention of the convention was called to the subject aids construction, it is persuasive that such was not the intention.

Conceding all that is urged as to the meritorious purpose and necessity of the proposed issue of bonds, and accepting without qualification all representations relative to the emergency which unforeseen conditions in the money market have given rise to as a result of the present war, and even conceding those facts should have any contemporaneous bearing upon the constitutionality of a statute passed to meet such existing emergency, the fact that this law was enacted more than two years ago, in 1915, when, so far as shown, there was no emergency or imminent necessity and this country was not at war, precludes their consideration here.

For the reasons stated we are impelled to conclude that the order of the lower court granting a writ of mandamus herein must be reversed, but without costs, as the issue is between officials acting in good faith to test a legal question of public interest.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.