HART v WAYNE COUNTY

Docket No. 57143. Argued January 8, 1976 (Calendar No. 9).—Decided
April 1, 1976.

Plaintiff George Z. Hart filed a complaint against Wayne County
for an injunction to restrain the county from using county tax
funds to pay salaries of the Judges of the Recorder's Court of
Detroit. The plaintiff argues that the act which purports to
authorize the payments, 1919 PA 369, which was adopted by a
referendum vote of electors of the City of Detroit, was not
validly adopted because it was a local act affecting the entire
county and required a referendum of Wayne County voters.
The City of Detroit was added as a defendant and the record-
er's court judges intervened as defendants. Wayne Circuit
Court, Blair Moody, Jr., gave summary judgment for defend-
ants. The Court of Appeals, Bronson, P. J., and McGregor, J.
(Carland, J., not participating) reversed (Docket No. 19285).
Intervening defendants appeal. *Held:*

1. Funding of the judiciary is a unique situation presenting
overriding state concerns. Recorder's Court of Detroit is a state
court performing a state function and the Legislature has
authority to determine its funding and may charge the county
for these services as a way of apportioning public services
because recorder's court absorbs part of the Wayne Circuit
Court workload.

2. A referendum is not constitutionally required for § 13 of
1919 PA 369 because the funding provision is not a local act
under Const 1908, art 5, § 30, even though the act did provide
for approval by the voters of Detroit. The 1908 Constitution
gave the Legislature the right to establish courts and the intent
of the Constitution was that the Legislature should be able to
establish and modify recorder's court without a local-act refer-
endum.

The decision of the Court of Appeals is reversed and the
summary judgment in favor of the defendant City of Detroit

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 72 Am Jur 2d, States, Territories, and Dependencies § 35 *et seq.*
[2] 20 Am Jur 2d, Courts §§ 191, 198.

and the intervening defendants Judges of the Recorder's Court of Detroit is reinstated.

61 Mich App 188; 232 NW2d 678 (1975) reversed.

1. COURTS—RECORDER'S COURT—FUNDING—LEGISLATIVE FUNCTION.

Funding of the state judicial system is a legislative function; the Legislature has authority to determine the funding of the Recorder's Court of Detroit and may charge Wayne County for judicial services of the court as a fair way of apportioning public expenses (MCL 725.13; MSA 27.3953).

2. COURTS—STATUTES—VALIDITY—PRECEDENT.

The facts that the Supreme Court, in an earlier case, had conceded that an act passed in 1919 was valid and characterized it generally as a local act rather than a public act did not foreclose a challenge to the constitutionality of the 1919 act nor dispose of the question whether a funding section in the act is local or public where, in the earlier litigation, the question of constitutionality was not squarely before the Court and the funding section had not been a point of discussion (1919 PA 369).

3. STATUTES—LOCAL ACTS—REFERENDUM—RECORDER'S COURT —FUNDING.

A public act which assesses Wayne County taxpayers for salaries for the Judges of the Recorder's Court of Detroit is not a local act and does not constitutionally require a referendum of Wayne County electors because recorder's court performs a state judicial function (Const 1908, art 5, § 30; MCL 725.13; MSA 27.3953).

*James Thomson* for plaintiff.

*Aloysius J. Suchy,* Corporation Counsel and *David R. Kaplan,* Assistant Corporation Counsel, for defendant Wayne County.

*Kermit G. Bailer,* Corporation Counsel, and *Maureen P. Reilly* and *John E. Cross,* Assistants Corporation Counsel, for defendant City of Detroit.

*Alphonso R. Harper* for intervening defendants, Judges of Recorder's Court of Detroit.

*Amicus Curiae: Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jann C. Ryan,* Assistant Attorney General, for the State of Michigan.

PER CURIAM. On February 9, 1972, plaintiff-appellee filed a complaint against Wayne County for an injunction restraining the county from paying salaries of the recorder's court judges. The City of Detroit was added as a party defendant and judges of the recorder's court intervened as defendants. Wayne Circuit Judge Blair Moody, Jr., rendered summary judgment for defendants. The Court of Appeals reversed the summary judgment in an opinion by two members of a three-judge panel (the third not participating by reason of illness) finding summary judgment for plaintiff. Wayne County was enjoined from assessment for payment of salaries of recorder's court judiciary. Defendants-appellants, judges of the recorder's court, appealed. This Court granted leave to appeal and entered an order staying the Court of Appeals order. We reverse the Court of Appeals and reinstate the trial court's order of summary judgment in favor of defendants, judges of the recorder's court and the City of Detroit.

## Issue

Was the municipal courts of record act, 1919 PA 369, providing for county supplementation of salary for recorder's court judges, adopted in violation of Const 1908, art 5, § 30?

## I

In 1824 criminal jurisdiction in the City of Detroit was in the mayor's court for ordinance viola-

tions, in the justice of the peace court for state misdemeanors and preliminary examinations and in the Wayne Circuit Court for all other state law offenses. 2 Territorial Laws, p 226. 1850 PA 301 established the police court to take over jurisdiction of the former justice of the peace court. The police justice and clerk of police court were, by court order, paid by the county, as were justices of the peace. *People, ex rel Schmittdiel v Wayne County Board of Auditors,* 13 Mich 233 (1865).

Recorder's court was created in 1857 by 1857 PA 55 as a Detroit municipal court. It was given jurisdiction of the former mayor's court for Detroit ordinance violations. It also was given jurisdiction formerly held by Wayne County Circuit Court over state-law offenses committed in Detroit, except for those still triable in police court (state misdemeanors). The one judge of recorder's court was paid by the state, and the clerk was paid by Detroit. Detroit and Wayne County shared costs of prosecution in recorder's court, with the county paying costs of state law cases and boarding of those prisoners and Detroit paying costs of ordinance cases and boarding of those prisoners. Juries were paid by the county.

1883 LA 326[1], in Ch XII, § 6, provided that the recorder was to be paid by the state and Detroit. This 1883 act encompassed all provisions governing recorder's court. It was amended by 1893 LA 408.

1919 PA 369[2], among other provisions, changed recorder's court by abolishing police court, thus giving recorder's court jurisdiction over all state offenses committed in Detroit.

---

[1] MCLA 726.1 *et seq.;* MSA 27.3551 *et seq.* (the recorder's court act).

[2] MCLA 725.1 *et seq.;* MSA 27.3941 *et seq.* (the municipal courts of record act).

The instant case concerns provisions for recorder's court found in the 1883 (as amended by 1893 LA 408) and 1919 acts.

Section 6 of 1893 LA 408 provides:

"Each of said judges shall receive from the treasury of the State of Michigan the same annual salary as may be payable to circuit judges. They shall also each receive from the treasury of the city of Detroit such additional salary as shall be sufficient, with the sum so received from the State, to make the salary of each of said judges five thousand dollars." [3]

However, § 13 of 1919 PA 369 provides:

"Each judge of said court, including the presiding judge, shall receive an annual salary from the county in which said court is located in the same amount as that paid by the State to circuit judges * * * ." [4]

Section 7 of 1919 PA 369[5] required referendum approval by Detroit before the act would take effect. Approval was voted by Detroit.

Plaintiff and Wayne County argue that the 1919 act was never validly adopted, therefore, the 1883 act as amended controls on salaries of recorder's court judges and Wayne County is not responsible for those salaries. They contend the 1919 act is a local act requiring a referendum under Const 1908, art 5, § 30, which provides:

"The Legislature shall pass no local or special act in

[3] MCLA 726.6; MSA 27.3556.

[4] MCLA 725.13; MSA 27.3953.

[5] MCLA 725.7; MSA 27.3947 provides in part:

"This act, or any amendment thereto, other than this section shall not become operative in any municipality of this state unless and until it is submitted to a vote of the qualified electors thereof and ratified by a majority of the electors voting thereon."

any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act, excepting acts repealing local or special acts in effect January one, nineteen hundred nine and receiving a two-thirds vote of the Legislature shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

Plaintiff and Wayne County argue that the district affected by § 13 of 1919 PA 369 was Wayne County, not the City of Detroit, because the burden of recorder's court salaries was shifted from the state to Wayne County. Because Wayne County did not approve by referendum, the 1919 act was not validly adopted.

Judges of the recorder's court argue that recorder's court performs a state function and § 13 of 1919 PA 369 provides a fair way of apportioning public expenses. The Legislature has authority to require the county to pay under § 13.

The City of Detroit argues that establishment and funding of a municipal court is a state legislative function under Const 1850, art 6, § 1 and not subject to local control. Moreover, this state legislative function is not affected by Const 1908, art 5, § 30.

Other arguments made by the parties are not necessary to resolution of this case.

Wayne Circuit Judge Moody held that recorder's court performs a state, not local, function and it is reasonable for the Legislature to charge the county for part of the salaries of the recorder's court judges. The 1919 act was partly a local act and partly a general state funding act. The general funding section did not require referendum approval under Const 1908, art 5, § 30.

The Court of Appeals reversed, holding that

1919 PA 369 was a local act requiring referendum approval by Wayne County. The Court of Appeals held the entire act invalidly adopted.

## II

In *Attorney General, ex rel Cotter v Lindsay,* 221 Mich 533; 191 NW 826 (1923), 1921 PA 364 was challenged. It amended 1919 PA 369, but contained no referendum approval provision (as did the 1919 act). The 1921 act was challenged under Const 1908, art 5, § 30, the local act section.

The Court held that the 1921 act (amending the 1919 act) was a local act. Therefore, it was unconstitutional because of lack of compliance with the referendum requirement. The Court's reasoning worked in two steps: (1) The 1919 act is a local act because it amended local acts, its object as expressed in its title indicates a local act, the entirety of the act indicates a local act and the § 7 referendum requirement indicates a local act; and (2) Since the 1921 act amended the 1919 act which is a local act, the 1921 act is a local act requiring referendum approval under the 1908 Constitution.

As the Court of Appeals noted, the *Lindsay* Court conceded validity of the 1919 act. This would seemingly end the instant litigation in favor of the judges, and the parties have so argued. However, the Court of Appeals did not find that this foreclosed the present challenge to the 1919 act because its constitutionality was not squarely before the *Lindsay* Court. Rather, focus was on the 1921 act.

Similarly, the question of whether the funding section of the 1919 act is a local act has never been squarely presented to this Court. It is true that the *Lindsay* Court generally characterized the

1919 act as a local act. However, the funding section is a unique section of the act and it has not been the point of discussion. Therefore, *Lindsay* does not control the instant case.

In *Common Council of Detroit v Engel,* 202 Mich 536; 168 NW 462 (1918), the Court held unconstitutional an act containing no referendum provision. The challenged act, 1915 LA 322, amended 1842 and 1869 laws governing Detroit public schools. The 1915 amendment increased the interest on bonds.

The Court classified the 1915 amendment as a local act, requiring a referendum under Const 1908, art 5, § 30.

The Court rejected the argument that the act was not local because it was concerned with education. The fact that it pertained only to Detroit made the act local. The subject of education did not place the Legislature above and beyond constitutional limitations (Const 1908, art 5, § 30).

In discussing the relation between Const 1908, art 5, § 30 and the Legislature's authority to legislate on education, the Court said:

"It cannot in reason be otherwise than that all powers of the legislature, whatever they may be, are, under and by virtue of the Constitution, subject to general constitutional mandates and limitations imposed on legislation without reservation." (p 543.)

*Engel* raises a serious question, *i.e.,* is the subject of judicial funding above and beyond constitutional limitations? *Engel* is more "on point" in declaring that a subject of general legislation is not exempted from the local act referendum requirement where the challenged statute pertains to a particular location. However, several cases

have held the local act designation inappropriate even in those circumstances.

In *Attorney General, ex rel Eaves v State Bridge Commission,* 277 Mich 373; 269 NW 388 (1936), the challenged statute created a commission to build and operate a bridge at Port Huron. No referendum was provided and the statute was challenged as unconstitutional because it was a local act. The Court held the statute to be a general act because all the state was affected by the bridge. "Its only so-called local characteristic is that its American approach is at Port Huron." (p 378.)

In *City of Ecorse v Peoples Community Hospital Authority,* 336 Mich 490; 58 NW2d 159 (1953), the Court rejected a similar constitutional challenge of a statute allowing the creation of authorities to develop hospitals. The statute was held not local:

"We have here a matter of health, which is a question of Statewide concern and in which the legislature has a large area of discretion. The defendant authority is a State agency and, as such, is not a municipal corporation or a body created by the municipalities here involved but by the State itself. See the *Huron-Clinton Case, supra* [300 Mich 1; 1 NW2d 430 (1942)]. The legislation in question, not being local in nature, does not require the vote of the local electors for its approval under article 5, § 30, Constitution 1908." (pp 502–503.)

In *W A Foote Memorial Hospital, Inc v City of Jackson Hospital Authority,* 390 Mich 193; 211 NW2d 649 (1973), the Court upheld a statute allowing creation of local authorities for the construction of hospitals. The Court relied on *Peoples Community Hospital,* finding that the statute was not a local act because health is a state concern. Therefore, no referendum was required under the Constitution.

*W A Foote, Peoples Community Hospital* and *State Bridge Commission* indicate that *Engel* is not the sole authority on exempting a general subject of legislation from the local act referendum requirement where the challenged statute pertains to a particular location. More importantly, funding of the judiciary is a unique situation presenting overriding state concerns. *Engel* does not apply in the instant case.

In *People, ex rel Schmittdiel v Board of Auditors of Wayne County,* 13 Mich 233 (1865), an 1863 law empowered Detroit Common Council to appoint a clerk for the police court and set the salary. The salary was to be paid by the county (as was the salary of justice of police court). The county refused to pay because it claimed, under statute, the right to set the salary for services rendered for the county. So, the question was whether services rendered by the clerk of the police court were services rendered for Wayne County. The Court, Justice CAMPBELL writing, held that the county had no right to set the clerk's salary:

"The office of the police court is to perform, within the city of Detroit, the duties performed by justices of the peace in townships, in the examination and trial of offenders against the criminal laws of the state, the police justice and the clerk sharing between them the duties elsewhere performed by justices alone. They are in no sense county officers; they are rather city officials, so far as place is concerned. Their duties relate entirely to the enforcement of criminal law, against offenders charged with violating the peace and dignity of the state, whose offenses are committed in Detroit. The only circumstances which connect these officers with the county, are the facts that offenses are tried in counties and that the officers are paid by the counties. But otherwise, the counties are no more directly affected than the state at large. They have no control over the

appointment or conduct of justices, nor over the prosecutions themselves, which are all conducted in obedience to state laws, and in which the county, as a public body, has no voice whatever.

"Upon examination of our state policy, before and since the adoption of the new constitution, it will be found that *many charges have been laid on counties, as such, where no benefit accrued to them in their corporate capacity, but where it was, doubtless, deemed a fair way of apportioning the public expenses.* It would be difficult to perceive what advantage a county derives from the civil proceedings between parties in the courts of justice, or why, if there be any advantage, the services of the judge, as well as of jurors and witnesses should not be deemed services rendered for the counties where they respectively sit. It is an advantage to have justice accessible to all, and to have evil-doers punished, but acts which do not affect the interests and security of the public at large have not usually been classed as crimes (although the distinctions are somewhat arbitrary), and the advantages in all these cases result to the community generally." (Emphasis added.) (pp 234–235.)

Therefore, Wayne County was required to pay the salary of a Detroit police court clerk whose duties related to trying state offenses committed in Detroit. The rationale was that this system was "deemed a fair way of apportioning the public expenses".[6]

In *Robison v Wayne Circuit Judges,* 151 Mich 315; 115 NW 682 (1908), the Court upheld a statute creating a juvenile court in the city of Detroit. One objection to the statute was that "[w]hile the juvenile court for which the act provides is limited

---

[6] *See, also, People, ex rel Knox v Treasurer of Wayne,* 40 Mich 62 (1879); *People, ex rel Probate Judge v Board of Supervisors of Manistee County,* 40 Mich 585 (1879); *People, ex rel Covell v Treasurer of Kent County,* 36 Mich 332 (1877); *People, ex rel LeRoy v Hurlbut,* 24 Mich 44 (1871) and *People, ex rel Royce v Goodwin,* 22 Mich 496 (1871).

in its jurisdiction to children of the city of Detroit, the expense of the establishment and maintenance of the court is imposed in part upon the city of Detroit and in part upon the County of Wayne". The Court was not sympathetic:

"The care of juvenile delinquents might well be and often is committed to the county rather than the city authorities. Their care and trial is the subject of police regulation, and cannot be said to be of the private concern of one municipality rather than another." (p 321.)

The Court cited *Schmittdiel* in support.

The Court in *Murtha v Lindsay,* 187 Mich 79; 153 NW 245 (1915), held that a state legislator could not simultaneously hold the office of recorder's court judge under a statute forbidding a legislator from holding any civil appointment under state authority. On pp 81–82, the Court commented on recorder's court:

"It is exercised by the person inducted into the office of recorder, not as an incident to a local office held by him, nor as an imposition upon a local officer of the performance of State duties. The office is inseparable from the entire jurisdiction of the officer, a jurisdiction conferred by the legislature with the sanction of the Constitution in force when jurisdiction was established. *It is by virtue of State authority alone that the office exists.*

"The serious question, or part of the question, is: Does the person taking the office do so by virtue of 'any other State authority,' within the meaning of the Constitution? In a sense, all justices of the peace, constables, and judges of courts of record are appointed—hold office—by virtue of State authority. *The recorder's court is, when exercising jurisdiction to try persons accused of crimes, under the general laws of the State, a State*

*court;* its judges exercising the powers of a circuit judge." (Emphasis added.)

In *Civil Service Commission v Engel,* 187 Mich 83; 153 NW 358 (1915), the City of Detroit Civil Service Commission challenged the right of recorder's court to appoint a clerk without commission approval. The commission argued that recorder's court was a "municipal department" and covered by the commission. The Court held that the commission had no authority over recorder's court:

"The recorder's court is a court established by the legislature, although its creation is evidenced by the charter of the city, which is a local law. It is a court of record, with jurisdiction to try persons accused of crimes committed within the city. *The execution of the criminal laws of the State is a matter of State concern, and in this respect the court possesses a jurisdiction which the electors of the city cannot confer. Power to amend the charter the electors have, but not power to interfere with the jurisdiction of this court, in so far as it relates to matters of State concern. It follows, logically, that the electors may not, by amendment of the charter, interfere with the incidental powers possessed by the recorder in exercising the jurisdiction which the court possesses, such as the appointment of necessary clerks of the court."* (Emphasis added.) (pp 87–88.)

In *People v De Meaux,* 194 Mich 18; 160 NW 634 (1916), the Court rejected the claim of a criminal defendant that the statute authorizing a judge from one district to substitute for a judge in another district was unconstitutional. Defendant claimed the statute violated the principle that the citizens of a district have a right to elect the judicial officer who holds court in their district. The Court noted:

*"The office of justice of the peace is a part of the*

*judicial system of this State, and in the exercise of the important functions of this office the persons filling it cannot be said to be performing duties local in character, but must rather be said to be performing duties in behalf of the entire State.*

"Chief Justice CAMPBELL, in the case of *People v Goodwin,* 22 Mich 496, at page 499, said:

" 'The judicial department of every civilized government is one of the three co-ordinate parts of the sovereignty which acts for the State in expounding the laws and enactments in which the other departments have acted for the people as legislators and the approvers of legislation. It represents only the law by which the people have, by their proper agents, bound themselves. It cannot, therefore, in any of its duties, be said to serve any county, or circuit, or district. Its services are all performed on behalf of the State, as the sovereignty from which all the law emanates. We held in the case of *People, ex rel Schmittdiel, v Board of Auditors of Wayne County,* 13 Mich 233, that *services in the administration of justice were in no proper sense local services.'* "(Emphasis added.) (pp 23–24.)

Recorder's court is a state court performing a state function, not a local function. Funding of the state judicial system is a legislative function. And, as noted in *Schmittdiel* and *Robison,* it is not unusual to charge the counties for these services as a fair way of apportioning public expenses. Because recorder's court is a state function, the Legislature has authority to determine its funding. Therefore, § 13 of 1919 PA 369 is not a local act under Const 1908, art 5, § 30. A referendum is not constitutionally required, although the 1919 act did provide for referendum approval by the City of Detroit.

Moreover, as noted by the trial court and City of Detroit, it is reasonable for the Legislature to charge the county for part of recorder's court judge's salaries because recorder's court absorbs

part of the Wayne Circuit Court load. The City of Detroit notes that its share of the 1975–1976 budget for recorder's court is in excess of $9,000,-000 while the county pays approximately $600,000 towards judicial salaries.

### III

Further support for classifying 1919 PA 369 as a general act may be found in the 1908 Constitution.

Const 1908, art 5, § 30 provides that the "Legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question". If recorder's court requires a local act, a general act cannot be used.

However, Const 1908, art 7, § 1, gives the Legislature the right to establish "such other courts of civil and criminal jurisdiction, inferior to the supreme court * * * , by a two-thirds vote of the members elected to each house". Thus, the Legislature has authority to pass a general act establishing recorder's court.

Because the 1908 Constitution gave the Legislature the right, by general act, to establish courts (art 7, § 1), the intent of the 1908 Constitution was that the Legislature should be able to establish and modify recorder's court without a local act referendum. Article 7, § 1 concerns a specific subject, the court system, while art 5, § 30 concerns a general subject, local acts.[7] Therefore, art 7, § 1

---

[7] "The rule to be followed when there is a conflict between general and specific provisions in the Constitution is as follows:

" 'In such a case, if there is a conflict between a general and a special provision in a constitution, the special provision must prevail in respect of its subject matter, since it will be regarded as a limitation on the general grant, but the general provision will be left to control in cases where the special provision does not apply.' 16 Am Jur 2d, Constitutional Law, § 69, p 247, and cases there cited." *McDonald v Schnipke,* 380 Mich 14, 19; 155 NW2d 169 (1968).

prevails when dealing with the state judicial system.[8] *McDonald v Schnipke,* 380 Mich 14; 155 NW2d 169 (1968).

Legislative revisions of recorder's court are general acts. 1919 PA 369 providing for county supplementation of salary for recorder's court judges does not violate Const 1908, art 5, § 30.

The Court of Appeals is reversed and the trial court's summary judgment for defendants is reinstated.

No costs, this being a public question.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and LINDEMER, JJ., concurred.

RYAN, J., took no part in the decision of this case.

---

[8] If it were to be held otherwise, the result would be incongruous. Article 5, § 30 allowed the Legislature to repeal local acts in effect on January 1, 1909 by a 2/3 vote of the Legislature. If the 1919 act were held to be a local act, the Legislature would be able to repeal part of the state's judicial system (recorder's court), but it could not revise it unless local voters approved.