*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALHOUN COUNTY,

        Plaintiff-Appellant,

v

CITY OF BATTLE CREEK,

        Defendant-Appellee.

FOR PUBLICATION
September 2, 2021
9:15 a.m.

No. 354857
Calhoun Circuit Court
LC No. 2019-003438-CZ

Before: STEPHENS, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Over a century ago, the Michigan Legislature enacted a statute requiring that the circuit court in Calhoun County conduct two terms of court each year in the county seat (Marshall), and two in the city of Battle Creek. The statute also obligated Battle Creek to furnish "a suitable and sufficient jail for the incarceration of prisoners" at the City's expense. Act No 272, Public Act 1905. In 1961, the Legislature reenacted virtually the same statute as MCL 600.1513, which also requires that Battle Creek "furnish and provide, free of expense to Calhoun county," both a "suitable place" for holding court within Battle Creek, and "a suitable and sufficient jail for the incarceration of prisoners during the sitting of the circuit court." MCL 600.1513(4).

In 2018, the city stopped paying the county for the cost of certain jail beds, and the county brought this suit. The city promptly moved for summary disposition, contending that MCL 600.1513(4) is an unconstitutional "local or special act" that required the approval of the citizens of Battle Creek, and no such vote was ever held. Const 1963, art 4, § 29. The circuit court agreed and summarily dismissed the case.

The various circuit courts of this state are not local courts, but rather pieces of a larger statewide court system. Establishing and maintaining a jail serves vital needs of the court, and thereby qualifies as integral to the performance of a state function. MCL 600.1513 is a general act that does not require a local vote to become effective. We vacate the circuit court's order and remand for continued proceedings.

# I. BACKGROUND

Since 1905, the circuit court in Calhoun County has convened in two locations—the county seat of Marshall and the county's largest city, Battle Creek—pursuant to a legislative arrangement. In section CL 14549, enacted by 1905 PA 272, the Legislature provided:

> After [1905], two of the regular terms of the circuit court for the thirty-seventh judicial circuit, said circuit being made up of Calhoun County, shall be held each year within the city of Battle Creek, in said County: Provided, *That the common council of said city of Battle Creek, or the citizens thereof, shall furnish and provide, free of expense to said county, a suitable place, including light, heat and janitor, for holding said court within said city and transacting the business thereof, and also a suitable and sufficient jail for the incarceration of prisoners, who may be held therein for trial, during the sittings of said court,* and also a fire-proof safe or vault within which to keep the files and records of cases on the calendar for any such terms of court; the place for the holding of said court and the jail, together with the sufficiency of said vault or safe, to be inspected and approved by the judge of said court or the prosecuting attorney of said county, which approval shall be in writing and shall be filed with the clerk of said county. [Emphasis added.]

This court structure continued with the enactment of the Revised Judicature Act, MCL 600.101 *et seq.*, in 1961. MCL 600.1513 largely echoes the substance of the 1905 statute, albeit in a reorganized version incorporating a few minor language changes:

> (1) Two of the regular terms of the circuit court for the thirty-seventh judicial circuit shall be held each year within the city of Battle Creek, and 2 of the regular terms shall be held within the city of Marshall, the county seat of Calhoun county.
>
> (2) The terms of court to be held at the city of Battle Creek shall be respectively alternated with the terms of the court to be held at the city of Marshall. The judge of the circuit court shall designate in writing which of the regular terms thereof shall be held within the city of Battle Creek, and shall transmit the designation to the clerk of Calhoun county.
>
> (3) The circuit court may adjourn any session of the court while sitting at one place, and continue the court at the other place of holding court.
>
> (4) *The common council of the city of Battle Creek, or the citizens thereof, shall furnish and provide, free of expense to Calhoun county, a suitable place for holding court within the city of Battle Creek and transacting the business thereof, and a suitable and sufficient jail for the incarceration of prisoners during the sittings of the circuit court,* and a fireproof safe or vault within which to keep the files and records of the court.

(5) At each term of the circuit court designated to be held in the city of Battle Creek, the county clerk of Calhoun county shall deposit in the building designated for the holding of the court, under the direction of the circuit judge, all of the records and files in all cases noticed for trial or hearing at such term on or before the first day of the term and when such term is finished, such records and files shall be returned to the office of the county clerk. [Emphasis added.]

For 87 years, the city of Battle Creek provided a courthouse and jail for the circuit court terms held within its borders. In 1992, Battle Creek and Calhoun County arranged to combine two neighboring land parcels—one owned by the city and the other by the county—upon which they would construct a new courthouse and jail. Calhoun County footed the bill for the construction costs, despite that MCL 600.1513(4) required Battle Creek to provide a courthouse and jail free of cost to the county. The parties negotiated a deal under which the city would provide free dispatch services to the Calhoun County Sheriff's Department, and the county granted the city access to jail space for 30 city prisoners at any given time.

In 2010, the Calhoun County Consolidated Dispatch Authority took over dispatch services for all municipalities in the county. The county no longer benefitted from its prior arrangement with the city, and the two entities reached a new agreement under which the city agreed to pay $1,735.20 per day for the use of 30 jail beds for the prearraignment lockup of city prisoners.

In 2015, 110 years after the Legislature's initial enactment of the Calhoun County court and jail funding arrangement, Battle Creek objected to its constitutionality. The city agreed to a year-by-year payment plan pending the resolution of its legal challenge. The Calhoun County Prosecutor then requested that the Attorney General express an opinion on the subject.

In 2019, a deputy attorney general (AG) issued an opinion regarding whether MCL 600.1513's requirement that Battle Creek provide a courthouse and suitable jail "remains in full force and effect or is now 'defunct.' " The AG emphasized that the statutory requirement had remained in place since 1905, and was enacted despite the existence of other statutes providing for county funding of the state courts and, specifically, jails.

The AG continued that MCL 600.1513 had not been repealed and remained in effect. And the plain language of the statute required the city of Battle Creek to provide a "suitable courthouse and jail for the 37th Circuit Court's sessions" held in that city. "The provision of the jail is specifically limited to the business and duration of the 37th Circuit Court's terms in Battle Creek," the AG noted. According to the plain language of the statute, "[t]he intent of this provision is to ensure that incarcerated individuals having business before the circuit court during its terms in Battle Creek are easily accessible to the court while remaining incarcerated."

The AG then turned to the legislative history of MCL 600.1513 as further support for its validity and purpose:

In 1905, when MCL 600.1513 was initially enacted, and in 1961, when it was most recently amended, Calhoun County was required to operate a county courthouse and jail in the county seat, in this case the City of Marshall. See 1897 PA 226. As a result, in requiring that the 37th Circuit Court hold two terms a year in Battle Creek, the Legislature also required that the city provide the courthouse and jail. MCL 600.1513. This prevented Calhoun County from being required to provide a courthouse and jail in two locations in the county. After MCL 45.16 was amended in 1971, Calhoun County was allowed to locate the county jail anywhere in the county, but the county courthouse was still required to be in the county seat. See 1971 PA 113,

This 1971 amendment to MCL 45.16 does not create an irreconcilable conflict with MCL 600.1513 that would repeal by implication the requirement that Battle Creek provide a suitable jail for the duration of the term of the circuit court. Calhoun County's obligations under MCL 45.16 are independent from Battle Creek's obligations under MCL 600.1513. And Calhoun County's actions under MCL 45.16 cannot negate or absolve Battle Creek's obligations under MCL 600.1513. Both statutory sections, therefore, are in full force and effect.

Thereafter, Battle Creek refused to pay for the housing of city prisoners in the jail constructed by the county. The county filed suit requesting a declaration regarding the continued validity of MCL 600.1513, and seeking recompense under theories of unjust enrichment, quantum meruit, and conversion.

The city sought summary disposition, contending that MCL 600.1513 was a special or local act that had not been approved by the voters, rendering it invalid under the Michigan Constitution. Specifically, Const 1963, art 4, § 29 provides:

The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by two-thirds of the members elected to and serving in each house and by a majority of the electors voting thereon in the district affected. Any act repealing local or special acts shall require only a majority of the members elected to and serving in each house and shall not require submission to the electors of such district.

Prior to the ratification of the 1963 constitution, Const 1908, art 5, § 30 similarly provided:

The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act, excepting acts repealing local or special acts in effect January 1, 1909 and receiving a 2/3 vote of the legislature shall take effect until approved by a majority of the electors voting thereon in the district to be affected.

The circuit court determined that the constitutional issue controlled the outcome and deemed MCL 600.1513 an unconstitutional local or special act that had not been put to a vote before the citizens of Battle Creek.

The county appealed the circuit court's summary dismissal of its complaint, and the circuit court held its judgment in abeyance pending resolution of this appeal.

## II. ANALYSIS

We review de novo a circuit court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; NW2d (2013). The circuit court did not reach the parties' arguments based on the intersection of various statutes governing the location and funding of circuit courts, but instead dismissed the county's complaint after analyzing the constitutionality of MCL 600.1513 alone. We review de novo a court's consideration of the constitutionality of a statute. *Makowski v Governor*, 495 Mich 465, 470; 852 NW2d 61 (2014). "Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

As noted, Const 1963, art 4, § 29 prohibits the Legislature from passing a "local or special act . . . where a general act can be made applicable." MCL 600.1513 directly names two localities subject to legislative control: Calhoun County and the city of Battle Creek. But the purpose of the statute is to govern the arrangement of the 37th circuit court, a division of the *state* court system. The management of the state court system is an issue of statewide concern and a statute governing the funding and operations of the circuit courts is a general act.

Before the ratification of Const 1908, art 5, § 30, the Michigan Supreme Court considered the propriety of the predecessor to MCL 600.1511, which was enacted in 1883.[1] *Whallon v Ingham Circuit Judge*, 51 Mich 503, 505; 16 NW 876 (1883). The defendant challenged the Legislature's authority to require that sessions of court be held somewhere other than the county seat. *Id*. at 508-509. The Supreme Court held that the Legislature had the power and authority to direct the location of court terms. "The circuit court has general common-law jurisdiction, and has always been a State court, held by judges paid by the State, and *is in no sense a local court*." *Id*. at 511-512 (emphasis added). "For the convenience of the people its terms" are held in in various locations around the state. *Id*. at 512. For the most part, circuit court districts coincide with county borders and usually, but not necessarily, are headquartered in the county seat. *Id*. But, the Court noted, "[t]here has never been any express constitutional provision upon the subject in anywise limiting the power of the Legislature to establish or change the place for holding the circuit court when once located." *Id*. And "[t]he county seat exists without [the Supreme Court], and the location of the seat of justice has always been a subject of legislative discretion." *Id*.

---

[1] MCL 600.1511 is identical to MCL 600.1513 in requiring the city of Lansing to provide and fund a courthouse and jail for the Ingham Circuit Court to convene two terms each year. The remaining court terms convene in the county seat of Mason.

Although *Whallon* was decided before the state constitution was amended to prohibit the enactment of local acts without a vote of that locality's electorate, its discussion of the general, statewide interest presented by the network of circuit courts remains accurate. Our Supreme Court's more recent decision in *Hart v Wayne Co*, 396 Mich 259; 240 NW2d 697 (1976), confirms the constitutionality of MCL 600.1513 and its subparts.

In *Hart*, 396 Mich at 263, the Michigan Supreme Court considered a 1919 statute requiring Wayne County to supplement the salaries of recorder's court judges. The question was whether the 1919 statute was a general or local act requiring a referendum under Const 1908, art 5, § 30. *Hart*, 396 Mich at 263. The Court noted that "funding of the judiciary is a unique situation presenting overriding state concerns." *Id*. at 268. The Court further held that, "[i]n a sense, all justices of the peace, constables, and judges of courts of record are appointed—hold office—by virtue of State authority. The recorder's court is, when exercising jurisdiction to try persons accused of crimes, under the general laws of the State, a State court." *Id*. at 270-271. The Court concluded that "[r]ecorder's court is a state court performing a state function, not a local function. Funding of the state judicial system is a legislative function . . . . Because recorder's court is a state function, the Legislature has authority to determine its funding." *Id*. at 272. The Court held that the payment of recorder's court judge salaries was not a local issue and a statute governing that issue was a general, and not a local, act. *Id*.

*Hart* guides our decision in this case. The locations for the terms of a circuit court and the funding of circuit court facilities pertain directly to the management of the state court system. This is an issue of statewide concern.

In *Hart*, the Supreme Court quoted at length from Justice CAMPBELL's opinion in *People ex rel Schmittdiel v Bd of Auditors of Wayne Co*, 13 Mich 233 (1865), a dispute regarding the payment of the salary of the clerk of the police court in Detroit. The Legislature assigned that responsibility to Wayne County, which in turn asserted an exclusive power to determine the amount of the clerk's compensation. The Supreme Court rejected Wayne County's position, highlighting that when it comes to the delivery of justice by the courts, "the counties are no more directly affected than the state at large." *Id*. at 235. Justice CAMPBELL explained that "[i]t is an advantage to have justice accessible to all, and to have evil-doers punished," and that those advantages benefit "the community generally." *Id*. In 1915, our Supreme Court again observed that "[t]he execution of the criminal laws of the state is a matter of state concern, and in this respect the court possesses a jurisdiction which the electors of the city cannot confer." *Civil Serv Comm of City of Detroit v Engel*, 187 Mich 83, 88; 153 NW 358 (1915).

Maintenance of a jail next to a courthouse benefits the administration of justice generally, for reasons that are self-evident. The general public safety is served by facilitating the rapid transportation of prisoners to and from court proceedings, and the immediate incarceration of those whose bonds are revoked or who are the subject of contempt proceedings in a nearby courtroom. The smooth operation of the Calhoun County court system, including the incarceration of its prisoners, is a matter of general public concern. In the Legislature's judgment, the Battle Creek jail is a necessary adjunct to the Battle Creek courthouse, and no basis exists to disturb that judgment.

Accordingly, MCL 600.1513 is a general act. The circuit court's ruling to the contrary was erroneous, as was its summary dismissal of the county's complaint on this ground. The circuit court has yet to consider the various other arguments posited by the parties and should do so in the first instance.

We vacate the circuit court's summary dismissal of Calhoun County's complaint and remand for continued proceedings. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher