## BROOKS ET AL. *v.* HILL.

An act was passed by the legislature for the organization of banks, generally, declaring them to be *corporations*, and making the directors individually liable for the debts of the corporation in case of insolvency. So much of the act as purported to confer *corporate* rights on the banks organized under it, was afterwards decided to be unconstitutional. By a prior act, banking was made unlawful unless authorized by law, and penalties were imposed for its violation. In an action brought against the directors of an insolvent bank organized under the first named law, it was held that the act against banking was not repealed by the first named act, except in favor of *incorporated banks* organized under it; and, as by the constitution *corporations* could not be created under it, the banks so organized were illegal, and therefore the action could not be sustained.

ERROR to Wayne Circuit Court. An action of debt was brought by Warren Hill in the circuit court, against Edward Brooks and other directors of the Detroit City Bank. The declaration stated the organization of the bank in November, 1837, under and by virtue of an act entitled "an act to organize and regulate banking associations," approved March 5th, 1837; that Brooks and the other defendants were elected directors, and always were directors of the bank, which claimed to have complied with the provisions of the act and to be a body politic, and on its organization commenced doing business as a bank under the act, and continued the same until the 10th February, 1839, when it failed and became insolvent, and was still insolvent; and that when it

failed it was indebted to Hill in the sum of $2,000, for money deposited with it while it was doing business, &c. Hill obtained judgment by default, to reverse which defendants brought the case to this court by writ of error.

*Romeyn,* for plaintiffs in error.

*Seaman,* for defendant in error.

*By the court,* WING, J.    The Detroit City Bank was organized under the act of March 5th, 1837, and became subject to the provisions of the amendatory act of the 30th December, 1837.

I shall not attempt to give a synopsis of either of these laws, as this has been done, and a full history of these laws has been given by the court in the case of Green, Receiver *v.* Graves, 1 Doug. Mich. Rep. p. 351.

It may be well to notice a few of the sections of these laws, having an immediate bearing on the question under consideration.

The 9th section of the act of the 5th of March, and the 4th section of the act of the 30th December, provide, that " all such persons as shall become stockholders of any such association shall, on compliance with the provisions of this act, constitute a body corporate and politic, in fact and in name, and by such name as they shall designate and assume to themselves, which name shall not be changed without the consent of the Legislature," &c.    This section further declares, that " by this name they shall have continual succession; and shall, in their corporate capacity, be capable of suing and being sued, &c.; may have a common seal and be capable of purchasing, holding and conveying any estate, real or personal, for the use of the said association."

The 21st section provides, that if such banking association shall become insolvent, the directors in the first place shall be liable in their individual capacity to the full amount which such insolvent associations may be indebted; and each stockholder shall thereafter be liable in like manner in proportion to his or her amount of stock, for the payment of the full amount of the debts of such insolvent association.

This suit is brought upon the statutory liability of the defendants in the court below, as directors of the Detroit City Bank, arising under the 21st section.    The cause of action is averred to have grown out of dealings with the Detroit City Bank as a bank, and in the exercise of its

functions as such.   By the terms of the 21st section, the liability of the directors is made to depend upon an indebtedness of the bank, and upon the contingency that the bank has become insolvent; and after their responsibility is exhausted, recourse may be had to the stockholders.

The question is therefore presented, whether there can be a recovery on a contract made with an association organized under the general banking laws.   The plaintiffs in error insist that there cannot be a recovery—

1. Because such contract was made by the bank as a corporation, when there was no corporation.

2. Because such contract was made by it as a bank, contrary to the inhibitions of the restraining act of this state.

In the case of Green *v.* Graves, it was decided by this court, that " so much of the act to organize and regulate banking associations as purports to confer corporate rights upon the associations organized under its povisions, is in violation of the 2d section of the 12th article of the constitution of this state, which declares, that ' the legislature shall pass no act of incorporation unless with the assent of at least two-thirds of each house,' and is therefore void."

The defendant in error suggests that this court should review their decision in the case cited, because it was counter to previous decisions, and the decisions of the judges at circuit.   The suggestion is very well, and this court would not hesitate to do so in this or any other case, if convinced of their error.   But that case was decided upon mature deliberation, and subsequent examinations of these statutes, and a careful examination of the New York decisions, have convinced us that that case was rightly decided, and that the general banking laws were and are void, so far as they purport to confer corporate powers upon banking associations organized under them.

It is manifest from the course of the decisions of the New York courts, and the opinions of the profession in that state, that if the question was now presented to their courts for the first time, disconnected with considerations of public policy, their general banking law would be held to contravene the provisions of their constitution.   The history of the decisions of the New York courts upon their general banking law, is, to say the least, quite singular.   The supreme court first held, that banking associations organized under their law were not corporations.

The court of errors held, that they were not corporations within the meaning of the constitution; they attempted to establish a distinction between certain money corporations and municipal corporations; but the doctrine having been afterwards established that there was no such distinction, the chief support of their former decision was withdrawn. Shortly afterwards, another case upon the same law was taken to the same court, and they were compelled to yield their former opinion, and admit that these associations were within the prohibition of the constitution; and, though they sustained the law, it was not upon legal principles. See 1 Denio 1.

If, then, the courts of New York have finally adopted such views in reference to their constitution, which is not as strict as ours, and in reference to a law which does not upon its face profess to create corporations, most certainly we cannot but affirm the doctrine of the case cited when applied to a law in which these associations are by an express enactment declared to be corporations. No other case was ever brought before this court where the same question was raised.

The Detroit City Bank was organized as a corporation under our general banking laws. There can be no pretence that it was organized as a partnership, or a joint stock company. The idea that any of these banking associations were partnerships, was never urged from any quarter in this state until after the case of Green *v.* Graves was decided by this court, or at least until about that period. None of these banking associations ever contracted, or professed to contract, with imdividuals or the public as partnerships. The stockholders organized it as a bank, and in the powers which it exercised, and in the manner of their exercise, it exhibited the functions and modes of action of a corporation; and, in the language of the counsel for the plaintiffs in error, it was baptized as such. But as the grant of corporate franchises was not authorized by the constitution, this court declared it to be void. What, then, remained of these associations? They could not exist as corporations, but they maintained in their proceedings all the forms prescribed by the law. What were they? They were joint stock companies usurping the franchises of corporations. They had an actual existence; but was it a legal existence?

It is conceded by the counsel for the plaintiffs, that, as individuals or

private partners, its stockholders might have issued promissory notes, or bills of exchange, and received drafts and loaned money; but it is insisted that in this case the contracts were made with them as corporators, professedly and avowedly as such, and that they were consummated as such; that they were made and were received as the contracts of the Detroit City Bank, a corporation—and not Brooks, Brown and others, private partners.

I do not understand that these last propositions are denied by defendant's counsel; neither, indeed, can they be denied. It was a matter well understood by all—both those who composed the associaion, and those who dealt with them—that they professed to be corporators, and were universally treated and dealt with as such, and not otherwise. If so, such transactions were void, at the least so far as these associations are to be considered as corporations. Coll. on Part. 421 to 425; Chitty on Cont. 718, 720, (edition of 1842;) Hall *v.* Franklin, 3 Mees. & Wels. 259; Josephs *v.* Pebrer, 3 Barn. & Cress. 639.

But plaintiffs insist that from this fact the important consequence flowed—that the bank was not exempted from the penalties and restrictions of the act restraining unauthorized banking.

The constitution of this state does not inhibit banking in any form to individuals or associations; it was not illegal at the common law; but by the restraining law of 1833, Laws of 1833, p. 530, and R. S. of 1838, p. 222, it is forbidden to persons to associate together for the purpose of banking, unless authorized by law. Was this done by the general banking law? Of course the legislature had the power to do it; but did they do so?

This question presents the main point in the case of the defendant in error. He assumes the position, that if so much of the general banking law as purports to create and confer corporate powers, is unconstitutional, the remaining part of the law is valid. His position is, also, that the principal end and object of the legislature was not to create corporations; that corporate powers were but a *means* to effect an ulterior object, viz: to supply a paper circulating medium; that corporations are not created for the sole purpose of calling such soulless beings into existence; but as a convenient and proper means of carrying into effect and attaining some other object.

If it can be shown, or fairly assumed, that the general banking laws

are substantial modifications of the restraining law, that only so much of these laws as confers privileges that corporations only can possess, is void, and the remainder is valid, we shall be led to the conclusion that the plaintiff must recover.

That a statute may be good in part and bad for the residue, is a sound rule of law, which has often been affirmed by the courts of the United States, of this state, and the English courts.

. The same doctrine holds good in regard to deeds and wills. If a man grants more than he owns, the grant will be good for what he owned, and void for the rest.

It is also a rule of construction of statutes, that if an affirmative statute which is introductive of a new law, directs a thing to be done in a certain manner, that it shall not, even though there are no negative words, be done in any other manner.

The intention of the legislature in passing the law, is to be carefully sought in the law itself; and if it can be carried into effect, it is the duty of courts to do so. And granting that it was the object of the legislature to grant greater facilities for organizing banking associations or corporations as a means to increase the circulation of a paper currency, we must carefully examine to ascertain whether the organization of associations was only ancilliary to this object, or whether this object was connected with others, upon which it was made dependent by the law, and without which it was not intended to be accomplished.

The act of March 5, 1837, *assumed to create corporations.* The associations authorized by it not only were to possess the faculties of corporations, but, by the 9th section, they were expressly declared to be bodies corporate and politic. When the corporation was organized in all respects, according to the requirements of the law, then it, the corporation, the body politic and corporate, in its artificial character, and as such artificial person, was allowed to issue bank notes, to receive deposits, and to make discounts. Its action was confined to banking. Business and investments entirely lawful for its stockholders as private partners, were inhibited to them as corporators; and privileges were bestowed upon them as members of a corporation, which by the restraining act were forbidden to them as individuals. Sec. 26, 27.

The corporation, the legal entity, exists separate and apart from its stockholders—it is a distinct person, and must be so regarded. In the

case of Moss *v.* McCullough, 5 Hill 132, Judge Cowen says: "The corporation, an artificial person, is the principal. Independently of the statute, the stockholder is no more liable to be sued than a stranger. The company and he are, in legal contemplation, distinct individuals."

The legislature appear to have had two objects in view: 1. to create corporations; and, 2. to vest in such corporations or artificial persons the franchises of banking. The act did not profess to throw open the business of banking to any and all persons, without restriction; but to allow individuals to form themselves into corporations, and then to permit the corporation to engage in banking.

It is said that there are only six sections in the amendatory act that contain the word corporations, viz: the third, fourth, twenty-fifth, thirty-second, thirty-third and thirty-sixth; that in all the other sections the companies are called banks, banking associations, or such associations; and that in all the provisions in relation to the organization of banks, and their mode of doing business and making contracts, and which confer on them banking powers, it is done by the name of banking associations, and not by the name of corporations. The defendant claims that if those sections containing the designation of corporations were stricken out, it would not affect the substantial banking powers of the associations.

But by the 9th section it is provided, that " all such persons as become stockholders of such associations shall, on compliance with the provisions of this act, constitute a body corporate and politic." When a number of persons assemble together and subscribed to the stock (if to a proper amount), they became an association, and that moment they became a corporation, and are made so by the law. When the association is named in the different sections of the law, such association as is thus declared to be a corporation is meant, and this quality or attribute enters into and becomes a part of its being; the effect is the same as if it was said such association *being a corporation.*

If we are right in this view of the law, it is of no importance to the argument of the defendant's counsel that the term corporation is in fact omitted in any of the sections, since in law it is understood and made a part of all the sections. If the sections containing the word corporation are stricken out, the essential attributes of a corporation are found in the other sections; and the supreme court of New York, in

the case of The People *v.* the Assessors of Watertown, 1 Hill 623, by Judge Bronson say, " It may be true, as has been urged, that the legislature intended to make a legal being, and give it all the essential attributes of a corporation. That, the legislature could not do. I do not refer to any written constitution. The constitution of things, the order of nature, forbids it. Human powers are not equal to the task of changing a thing by merely changing its name."

If, then, there were no corporations having a valid existence under the law, there were no recipients of the proffered franchises of banking, for the grant was to them only upon condition of their becoming organized as corporators, and transacting business as such. Take away their corporate attributes, and what remained of these associations? The privilege of banking was not proffered to Brooks and others as partners, but to them as corporators, constituting an artificial person, contracting and acting as such. They were required to comply with the provisions of the law, before they could engage in banking; and when they had done so, they become, by express enactment, corporations. If they failed to comply with the law in the subscription of stock, or in neglecting to assume a corporate name, could they have claimed the privilege of banking? and if they did these things, they usurped the franchises of a corporation. There was no grantee in this case capable of taking. The privilege was offered to corporations potentially and in name, but the legislature failed to create the corporations.

Conceding, as we have said, that an act may be good in part, and bad in part, the legislature might have repealed the restraining act; if they had done so, and then, by an independent enactment, the creation of an *indefinite* number of corporations had been authorized as a *distinct* provision, the latter would not have invalidated the former. But in this case the good and bad are *inseperably* blended. Nay, the vicious is a condition precedent to what would have been a valid enactment. The restraining act was repealed, not in favor of individuals, but of corporations; and where there were no corporations of the character required by it, it remained in full force.

If these views are correct, what is the effect of the restraining law upon the claim set up in this case?

If the general banking law did not have the effect to repeal the re-

straining law, then the first step in the organization of these associations was penal. All securities taken by them were void. As nothing is said in the law as to the validity of their issues, this must be determined upon general principles.

The principle is this: The organization of the company being forbidden, and its objects being unlawful, its contracts made in furtherance of the illegal objects by such association, are all tainted with illegality, and cannot be enforced against either party. The law is not satisfied by a payment of the penalty. See the following authorities on this point. 2 Kent's Com. 466; Story's Conflict of Laws 244, 248; Lightfoot *et al. v.* Tenant, 1 Bos. & Pul. 551, 556; De Groot *v.* Van Duzen, 20 Wendell 390; Bank U. S. *v.* Davis, 2 Hill 458-9; Jackson *v.* Walker, 5 Hill 30; 1 Maule & Sel. 596; 14 Mass. 322. In the case of Pennington *v.* Townsend, 7 Wendell 276, the check sued on had been discounted in New York by the agents of the New Jersey Protection and Lombard Bank. The opinion of the court was delivered by Judge Nelson, and the conclusion is as follows: "But it is said that the incurring the penalty of $1,000, is the only consequence of a violation of the restraining act of 1818, and that the contract may be enforced as valid; that the transaction is only *malum prohibitum*, and not *malum in se*, and that the former differs from the latter in this, that the penalty is the only punishment or consequence. Castle's case, Cro. Jac. 644, and Rex *v.* Wright, 1 Bur. 543, cited in support of this doctrine, are not authorities to the extent claimed; they establish the position, that where a new offence is created by statute, and a penalty affixed, the punishment for an infraction of the law, can only be in the mode prescribed. The same principle is recognized in the 2 R. S. 696, Sec. 39. Giving full effect to this principle, the civil rights and remedies arising out of the inhibited acts are left untouched, and I apprehend it will be found that so far as these are concerned, there is no distinction between an act *malum prohibitum* and *malum in se*. Both are equally forbidden and unlawful; and I will add, both are immoral, and cannot be the foundation of a civil right that will be enforced in a court of justice. 14 Johns. R. 273. In Thallimer *v.* Brinkerhoof, 20 Johns. R. 397, Ch. J. Spencer says: 'It is a fundamental rule, that all contracts which have for their object any thing repugnant to the general policy of the law, or contrary to the provisions of a statute, are void; for it is a rule as well

in law as in equity, *ex turpi contractu actio non oritur.'* In the same case, Mr. Justice Woodworth says; 'An agreement expressly prohibited by statute must necessarily be considered inoperative and void. It will not be seriously urged that the party is subject to the penalty only, and that the courts are bound to consider the contract legal and valid.' The principle had before been avowed, and frequently enforced, that an action in affirmance of an illegal contract, the object of which was to enforce the performance of an engagement prohibited by law, could in no case be maintained. The question has been recently fully examined by the supreme court of the United States, Bank of U. S. *v.* Owen, 2 Peters 527, and in which the distinction urged by the plaintiffs, so far as civil rights and remedies are concerned, is repudiated as unsound. It is said, if the security should be declared void, still the plaintiffs are entitled to recover the money loaned, under the common counts. Whether this principle is applicable at all to this case, I will not stop to inquire, for there is no pretence for its application to this defendant, inasmuch as no money was ever loaned by the plaintiffs to him. Utica Ins. Co. *v.* Cadwell, 3 Wendell 302."

There is another ground upon which this case might have been decided. The defendants in the court below are not declared against as original promisors, but as directors of an incorporated bank, and on a contract of the bank. There being no such body, there can be no directors of it. Defendants cannot be held as sureties of a principal that never existed. Their contingent liability is indissolubly connected with and dependant on the existence of a contracting corporation, apart from the stockholders. Their statutory liability was secondary and subsidiary to that of the principal; and if defendants could be held liable in any form, it would be as original promisors, but they are not declared against as such.

We have decided the broad question as it was submitted by both parties. On either ground, the plaintiff in the court below must fail.

We have not been unmindful of the fact that large interests were involved in this question; that a few bad men will, by our decision, go free with their ill-gotten gains; at the same time hundreds of misguided and innocent men will be relieved from entanglements into which they have been led by the influence and example of others equally honest and innocent, and in whose judgment they confided. As a general

thing, one common fate appears to have awaited the banker and his creditor, the deceiver and the deceived—all, or nearly all, are bankrupts.

This is the first time this question has been brought before this court for a decision. We entered upon the examination of it under a full sense of its magnitude and importance. We feel a strong conviction that our conclusions are correct; and this is all we feel it proper or necessary for us to say in reference to our feelings, to the obligations that rested upon us, and the part which we have enacted in the closing scene of this great drama.

*Judgment reversed.*