| 57 | 31 |
|----|-----|
| 104 | 623 |

</div>

### Charles W. Stowell v. The Board of Supervisors for Jackson County.

*Expenses of justice—Board of jurors—Supervisors' powers.*

1. The expenses of administering justice are for the benefit of the State and are charged to the county only by way of properly distributing the burden.    Claims for their payment are not under the exclusive control of the supervisors, which extends only to county charges.

2. The expense of boarding and lodging jurors in a criminal case must be audited by the county supervisors and paid by the county if the trial judge has exercised his discretion to seclude the jurors during trial and direct that they be lodged and boarded at a particular place.

3. A jury, when sworn, is part of the court and cannot be put beyond its supervision.

Mandamus.    Submitted May 5.    Granted May 13.

*Hewett & Freeman* and *Eugene Pringle* for relator.

*Austin Blair* for respondent.

CAMPBELL, J.    The relator, who keeps a hotel in the city of Jackson, presented a bill for the expense of boarding and lodging jurors and the officers in charge during a portion of the time occupied in the trial of a murder case in Jackson county.    The circuit judge deemed it necessary to seclude the jurors from association with the public, and, after various

inquiries, determined that they should be sent to relator's hotel, the terms having been accepted and found reasonable. In conformity with the arrangement adopted by the court, the jury was given the accommodation agreed upon.

After the trial was over and the jury discharged, relator presented his claim to the board of supervisors, who, after some discussion, rejected it as not a county charge, and allowed none of it.

The grounds of this refusal, as now set up in defense of the application for mandamus, are the obligation of jurors to board themselves, and the want of power in the court to create county charges.

These reasons are to some extent connected, although not altogether dependent on each other.

It cannot very well be claimed that the various members of the jury are answerable to this relator, when they made no contract with him themselves, and authorized no one to do so for them, and there is no reason for holding that it is a charge on their fees. They are allowed a per diem fee, which is, no doubt, all they can ask for their services and expenses, so long as they are left at liberty to choose their own mode of living. The general custom in this country is to allow jurors to separate during the trial and before they are charged. But it is sometimes necessary to provide for their safe custody while waiting for agreement, and during that period it is now generally understood that they should not be deprived of food and necessaries. In civil cases this is frequently provided for by consent of parties. In criminal cases the public authorities have furnished the necessary conveniences,—sometimes through the sheriff, who has been commanded to do so, and sometimes through direct orders of the court itself.

It must always depend upon the power and discretion of the court whether they shall be secluded or not. Mr. Bishop says this is the general American rule in capital cases (1 Crim. Proc. § 995); and it must, in the nature of things, be within the power of the court to exercise oversight concerning the place and manner of their confinement. It would be very

unsafe, and might imperil the validity of a conviction, if the care of the jury should be left to the discretion of an officer. We have had some illustrations of this in cases before us. The jury is, when sworn, a part of the court itself, and cannot be put beyond the supervision of the court and its discretion in determining what safety requires. It is not seriously disputed, and in the face of the settled law it cannot be disputed, that the power of the court extends to both the fact and the place of custody.

If the court has power to require such action, there must be a liability on the part of the public to pay such expense as it involves. Our constitutional and statutory regulations are not consistent with the idea that any one can be compelled to furnish property, or the use of property, without compensation. Whoever has power to incur the obligation must necessarily have power to bind to its fulfillment. There are many things which become incidentally necessary in the support and action of courts which are not specifically provided for by law, and which no one is legally bound to furnish. Usually these incidental expenditures are made by the sheriff or clerk, and no one questions their correctness. But the courts cannot be left at the mercy of their officers in such matters. The practice has always been, and it is necessary, for the court itself to require the procurement of such articles and services. There is no reason for distinguishing this case from any other, where in the course of procedure an emergency arises for action which will create expense. It would be barbarous to confine jurors within the precincts of the court-house, and there is no authority to confine them as prisoners in jail. There must be some power to select a suitable place, and facilities for their comfort; and while, perhaps, the sheriff might be authorized to make this selection with the court's approval, yet the obligation to pay for it would, none the less come from the fact that the court required it. It is within the legislative power to arrange specifically how all these matters should be disposed of; but as the law now stands, the inherent power and duty of courts to exercise their

functions must authorize such action as becomes expedient in the course of judicial business.

The fact that there are not many authorities on this subject rather tends to indicate acquiescence in this practice than otherwise. There is, however, some authority upon it. In civil cases the charges are not usually allowed against the county, as the jury will seldom be put apart during trial, and the whole matter of their maintenance is arranged by consent, where this is done. The rule in civil cases is laid down in *Young v. Buncombe* 76 N. C. 316. But in criminal cases the power of the court to keep them in custody, and to bind the county to pay for their maintenance, is established by several cases, and is believed to have been done without dispute heretofore in this State. For cases elsewhere, see *Fernekes v. Supervisors* 43 Wis. 303; *Com. v. Clue* 3 Rawle 498; *Com'rs v. Hall* 7 Watts 290; *State v. Engles* 13 Ohio 492; *Sargent v. State* 11 Ohio 474; *State v. Armstrong* 19 Ohio 116; *Commissioners of Allegany Co. v. Commissioners of Howard Co.* 57 Md. 393; *Bates v. Independence Co.* 23 Ark. 723. The latter case is chiefly significant as showing it to be a county charge.

Of the power of courts to incur similar expenses generally for court exigencies, so as to bind the county, without statute, the authorities are quite clear. *People v. Stout* 23 Barb. 349; *McCalmont v. Allegheny Co.* 29 Penn. St. 417; *Supervisors of Crawford County v. Le Clerc* 4 Chand. 56; *White v. Polk Co.* 17 Iowa 413.

Our own decisions have always held that while the supervisors are, under the Constitution, exclusive judges of the propriety of services for the county, yet they have no such exclusive power over those county charges that are not for such services; and we have also held that the expenses of justice are incurred for the benefit of the State, [and only charged against the counties in accordance with old usage, as a proper method of distributing the burden. *People v. Auditors of Wayne Co.* 13 Mich. 233. Also cases in note to *Kennedy v. Gies* 25 Mich. 83 (annotated ed.). Any other rule would put it in the power of a board of supervisors to

prevent courts from exercising their proper functions. In my opinion the supervisors were bound to audit this account. Mandamus must issue as prayed, without costs.

The other Justices concurred.