GRAND TRAVERSE COUNTY v STATE OF MICHIGAN

Docket Nos. 98712, 98714. Argued March 9, 1995 (Calendar No. 7). Decided August 23, 1995.

Grand Traverse County and other governmental units that provide funding for Michigan courts filed a class action in the Court of Claims against the State of Michigan, alleging that former MCL 600.9947(1); MSA 27A.9947(1), Const 1963, art 6, § 1, and Const 1963, art 9, § 21 obligate the state to fund the operations of the trial courts. A similar action was filed in the Ingham Circuit Court. The court, Michael G. Harrison, J., ordered the cases consolidated. Thereafter, the Court of Claims, James R. Giddings, J., held that the plaintiffs are entitled to reimbursement for the operational costs of Michigan's trial courts under § 9947(1), but that state funding was not required by the constitution, and that the state is not obligated to pay the cost of auditing trial court expenses. The Court of Appeals, in an unpublished opinion per curiam, affirmed the trial court's determination of liability, but held that no damages could be awarded (SAWYER, J., concurring), (REILLY, P.J., concurring in part and dissenting in part), and (P. J. CLULO, J., concurring in part and dissenting in part) (Docket No. 156342). The parties appeal.

In a unanimous opinion by Justice RILEY, the Supreme Court held:

MCL 600.9947; MSA 27A.9947 precludes the instant statutory claim. The Legislature did not intend to create a judicially enforceable private cause of action for money judgment against the state; rather, it clearly provided the remedy that would obtain if funding was not forthcoming. Moreover, the Michigan Constitution does not require the state to fund the entire cost of trial court operations.

1. Section 9947(1) proposed to appropriate an increasing amount of funding for trial court operations, beginning in 1983 and reaching full funding by 1988. However, § 9947(2) contemplated a situation in which the funding in § 9947(1) was nonexistent, thereby providing a legislative means of obviating the expenditures set forth in § 9947(1). Section 9947(2) basically provided that if § 9947(1) was not followed, the Legislature would cease other funding. The record indicates that neither

§§ 9947(1) nor 9947(2) were implemented or followed. After review of the merits of this question, no principled basis for continuation of this cause of action can be found. Reviewing the statute in its entirety, a plain reading simply does not support the cause of action or the relief requested.

2. The Legislature clearly intended that if the funding specified in § 9947(1) was not appropriated, tie-barred funding would cease. This was the only remedy contemplated. As a whole, the only reasonable and harmonious conclusion from reading all the provisions of § 9947 is to conclude that the Legislature provided a specific remedy of nonfunding in other areas, but in nowise contemplated a private cause of action for money judgment. While this remedy was not sought or implemented and the Legislature failed to follow through on its announced intention, that does not change the status of a private cause of action for money judgment—the remedy provision clearly indicates an intent to preclude an action for money damages.

3. Const 1963, art 6, § 1 and art 9, §§ 1, 3 do not require the state to pay the entire cost of trial court operations. While strong arguments can be made that state funding would be a more desirable system of court financing, it is for the Legislature to determine whether to adopt such a system. The purpose of adding the phrase "one court of justice" in Const 1963, art 6, § 1, was not to change the traditionally local character of the courts to one totally controlled and funded by the state. Rather, the focus was on administration of the court system, with the debate of the Constitutional Convention dealing primarily with the degree of authority that would be given the Supreme Court in overseeing the operation of the lower courts. There is no suggestion in the debates, or in the Address to the People, that there was an intention to change the method by which the courts are funded. Despite the fact that the courts have always been regarded as part of state government, they have operated historically on local funds and resources. An unbroken line of cases recognizes the practice of imposing the costs of operating the courts on local funding units. Given this practice, funds provided by local units constitute "other resources" within the meaning of Const 1963, art 9, § 1 and thus may be considered by the Legislature in satisfying its constitutional obligation to fund governmental activities. Local financing of the courts does not violate the uniformity of taxation provision of Const 1963, art 9, § 3. The requirement applies to uniformity of rates and assessment. The fact that there are differing property values, millage rates, and levels of judicial expenditures is not controlling. The uniformity must be coextensive with the territory to

which it applies. Thus, it is only necessary that a county or city tax be uniform throughout that county or city.

Affirmed in part, reversed in part, and remanded.

*Law, Weathers & Richardson* (by ˙ *Douglas W. VanEssen*) for the plaintiffs.

*Frank J. Kelley,* Attorney General, and *Thomas L. Casey,* Solicitor General, for the defendants.

Amicus Curiae:

*James E. Townsend* for 20th Judicial Circuit Court, Ottawa County Probate Court, and 58th Judicial District Court.

RILEY, J. These consolidated cases present us with statutory and constitutional questions regarding the funding of Michigan trial courts. With respect to the statutory question, MCL 600.9947; MSA 27A.9947, we conclude that the Legislature did not intend to create a judicially enforceable private cause of action for money judgment against the state. In § 9947(2), the Legislature clearly provided the remedy that would obtain if funding was not forthcoming. Hence, regardless of any intention to appropriate, the legislative remedy precludes the instant suit. Moreover, for the reasons stated below, we hold that none of the constitutional provisions cited requires the state to fund the entire cost of trial court operations.[1]

I

In 1980, the Legislature passed a package of

---

[1] We do not address whether certain constitutional provisions require the state to pay some components of trial court operations. See, e.g., Const 1963, art 6, § 18 (addressing the salaries of the justices of the Supreme Court, the judges of the Court of Appeals, the circuit judges, and the probate judges). Because plaintiffs are only seeking total funding, discussion of specific funding requests or mandates is not necessary.

bills dealing with the restructuring of a number of the trial courts in Wayne County,[2] and providing for state funding of most of the costs of operating the Third Judicial Circuit, the Thirty-Sixth District Court, and the Recorder's Court for the City of Detroit. 1980 PA 438-442. Included in 1980 PA 438 was former MCL 600.9947(1); MSA 27A.9947(1),[3] which provided:

(1) The legislature shall appropriate sufficient funds in order to fund:

(a) At least 20% of all court operational expenses in the state fiscal year beginning October 1, 1983.

(b) At least 40% of all court operational expenses in the state fiscal year beginning October 1, 1984.

(c) At least 60% of all court operational expenses in the state fiscal year beginning October 1, 1985.

(d) At least 80% of all court operational expenses in the state fiscal year beginning October 1, 1986.

---

[2] Among other things, these statutes abolished the Common Pleas Court of the City of Detroit and the Traffic and Ordinance Division of the Recorder's Court for the City of Detroit, and created the Thirty-Sixth District Court. Other provisions created a structure for the partial joint administration of the Third Judicial Circuit and the Recorder's Court and established a State Judicial Council to serve as the employer of trial court employees who are paid by the state.

[3] The quoted language was in effect for the years relevant to the instant appeals. That section was amended by 1993 PA 189, and now reads as follows:

(1) Except as otherwise provided in this act, the legislature shall appropriate sufficient funds in order to fund at least 31.5% of all trial court operational expenses, subject to the offset provisions of subsection (6), beginning with the state fiscal year that begins October 1, 1993. It is the intent of the legislature that the state will fund the highest percentage of trial court operational expenses, offset by an equivalent percentage of court revenues collected by counties or district control units, as available funds will allow, as determined by the legislature.

(e) At least 100% of all court operational expenses in the state fiscal year beginning October 1, 1988.

The record indicates that since the enactment of § 9947, the Governor has not included in the budget or general appropriations bills funding for the purposes specified in that statute. Further, the Legislature has not passed an appropriations bill for those purposes. Accordingly, in September 1988, plaintiffs filed a three-count class action complaint in the Court of Claims. Count I alleged that the state violated its duty under § 9947(1) to fund court operational expenses, and requested declaratory relief and a money judgment to reimburse the plaintiffs for the expenses they paid in calendar year 1986.[4] Count II alleged a duty of the state under Const 1963, art 6, § 1[5] to fund court operational expenses, and requested a declaratory judgment to that effect. Count III sought a declaration that under Const 1963, art 9, § 21, and several statutes, the state was required to establish an annual accounting system for all court operational expenditures and to pay the expenses of that system.

In October 1989, eight other counties filed a similar action in the Ingham Circuit Court. The two actions were later consolidated before Ingham Circuit Judge James R. Giddings. After consolidation, the certified class of plaintiffs consists of 134 Michigan local governmental units that fund

[4] In order to avoid the need for repeated amendments of the pleadings or the institution of new litigation with respect to court operational expenses incurred during the pendency of the case, the parties agreed that if the counties prevailed with respect to their allegation of liability, claims for expenses for subsequent years would be addressed as part of the proofs of money damages.

[5] At later stages of the case, the plaintiffs have also relied on Const 1963, art 9, § 1 and § 3.

courts. There are 76 counties, 46 cities, 11 townships, and one village in the class.

The parties filed motions for summary disposition of the legal issues. The trial court ruled on questions of the state's liability, holding that plaintiffs are entitled to reimbursement for the operational costs of Michigan's trial courts under § 9947(1). With respect to counts II and III, the court held that state funding was not required by the constitution, and that the state was not obligated to pay the cost of auditing trial court expenses. The court certified its decision as a final order under MCR 2.604(A), and reserved the question of damages for consideration, if necessary, after appellate review of the determination of liability.

Both sides appealed.[6] In an unpublished per curiam opinion and three separate opinions, the Court of Appeals affirmed the trial court's determination of liability, but held that no damages could be awarded. The per curiam opinion indicated that at least two judges agreed on each of the following points:

> I.A. Judges SAWYER and CLULO agree that under MCL 600.9947(1); MSA 27A.9947(1), the state was obligated to begin partial funding of all court operational expenses on October 1, 1983, and to assume full funding on October 1, 1988; plaintiffs were relieved of their obligation to fund court operational expenses as of October 1, 1988.
>
> I.B. Judge SAWYER is of the opinion that, although the state failed to assume its obligation

[6] The Court of Appeals dismissed the claim of appeal and the cross appeal for lack of jurisdiction. The order stated that the trial court's ruling was not a final order appealable by right. The plaintiffs had also filed an application for leave to appeal to this Court before decision by the Court of Appeals. We entered an order directing the Court of Appeals to treat the state's claim of appeal as an application for leave to appeal and to grant the application, and to treat the plaintiffs' cross appeal as having been filed following the grant of leave to appeal.

under the statute for either partial or full funding of court operational expenses and plaintiffs continued supplying funds for those expenses, plaintiffs are not entitled to be reimbursed for those expenditures. Judge REILLY is of the opinion that plaintiffs are not entitled to reimbursement because § 9947(1) did not obligate the Legislature to fund the trial courts.

II. The panel agrees that the state is not obligated under Const 1963, art 6, § 1, Const 1963, art 9, § 1, or Const 1963, art 9, § 3 to fund trial courts.

III. The panel agrees that the state is not obligated to perform or pay for annual auditing of trial court expenditures under MCL 21.45; MSA 3.595.

In separate applications, defendants appealed to this Court from part I(A) of the Court of Appeals decision, and plaintiffs appealed from parts I(B), II, and III.[7] This Court granted the applications in an order entered August 25, 1994. 446 Mich 870.

II

A

We turn first to plaintiffs' contention that the funding schedule in § 9947 is enforceable in an action for money judgment. We conclude that the statute itself precludes an action for money judgment.

Our review of funding legislation is no different from other legislative enactments; our duty is to give effect to the intent of the Legislature as expressed by the plain meaning of the statute. See *People v Lee,* 447 Mich 552, 557; 526 NW2d 882 (1994). In other words, we must review the entire law itself in order to arrive at the legislative

[7] Plaintiffs have not briefed the issue regarding the cost of auditing trial court expenses, and we will not discuss that matter in this opinion.

intent and provide an harmonious whole.[8] If the intent is evident from this comprehensive review of the statute, our inquiry ends and we employ the plain intent. *Stebbins v Grand Rapids Superior Court Judge,* 108 Mich 693, 698; 66 NW 594 (1896).

In this case, § 9947(1) of the statute proposed to appropriate an increasing amount of funding for trial court operations, beginning in 1983 and reaching full funding by 1988.[9] However, § 9947(2)[10] contemplated the situation in which the funding in § 9947(1) was nonexistent, thereby providing a legislative means of obviating the expenditures set forth in § 9947(1). Section 9947(2) basically provided that if § 9947(1) was not followed, the Legislature would cease other funding.

The record indicates that neither § 9947(1) nor § 9947(2) was implemented or followed. Accord-

[8] *In re Forfeiture of $5,264,* 432 Mich 242, 251; 439 NW2d 246 (1989); *Brooks v Hill,* 1 Mich 118, 124 (1848); *Smalley v Ashland Brown-Stone Co,* 114 Mich 104, 107; 72 NW 29 (1897).

[9] (1) The legislature shall appropriate sufficient funds in order to fund:

(a) At least 20% of all court operational expenses in the state fiscal year beginning October 1, 1983.

(b) At least 40% of all court operational expenses in the state fiscal year beginning October 1, 1984.

(c) At least 60% of all court operational expenses in the state fiscal year beginning October 1, 1985.

(d) At least 80% of all court operational expenses in the state fiscal year beginning October 1, 1986.

(e) At least 100% of all court operational expenses in the state fiscal year beginning October 1, 1988.

[10] If the legislature does not appropriate sufficient funds to comply with subsection (1) for any fiscal year, the funds which are necessary for the continued implementation of sections 304, 555, 563, 564, 592, 593, 594, 595, 821, 8121a, 8202, 8272, 8273, 8275, 9104, 9943, and sections 13, 31, 32, 34, and 35 of Act No. 369 of the Public Acts of 1919, as amended, being sections 725.13, 725.31, 725.32, 725.34, and 725.35 of the Michigan Compiled Laws, shall terminate on September 30 of the fiscal year immediately preceding the fiscal year for which sufficient funds have not been appropriated.

ingly, in 1988, the year in which full funding was to be achieved, plaintiffs filed this class action, seeking, inter alia, a money judgment equivalent to amounts proposed in § 9947(1). The trial court found for plaintiffs. The Court of Appeals, in separate opinions, affirmed the liability issue, but found no means to award the requested damages, and thus reversed.

After reviewing the merits of this question, we cannot find a principled basis for continuation of this cause of action. Reviewing the statute in its entirety, we hold that a plain reading of the statute simply does not support this cause of action or the relief requested.

The Legislature in this statute clearly intended that if the funding specified in § 9947(1) was not appropriated, tie-barred funding[11] for, inter alia, salaries of Court of Appeals judges, salaries of all circuit court judges, probate judges, and certain expenses of Detroit and Wayne County courts would cease.[12] This was the only remedy contemplated. Indeed, contrary to what plaintiffs seek in this lawsuit, the Legislature contemplated subjecting the state to *less, rather than more,* outlays in the event the statute was not followed.[13] As a whole, the only reasonable and harmonious conclusion from reading all the provisions of § 9947 is to

[11] Under the current statute, see n 3, this funding is no longer contingent on the funding of "trial court operational expenses," like it was in § 9947(1).

[12] Plaintiffs have not asked this Court, and the facts do not present themselves, to review whether this Court has the power to compel "reasonable and necessary" expenses for trial court operations. See *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co,* 423 Mich 705, 724, 728, 734-746; 378 NW2d 744 (1985) (action against the county; discussion of inherent powers to compel "reasonable and necessary" expenses where a coequal branch of government essentially attempts to shut down another branch, i.e., the judiciary).

[13] Whether appropriation, outlay, or money judgment are distinct terms is not essential. The financial obligation, if any, on the state was intended to be less in the event of nonfunding.

conclude that the Legislature provided a specific remedy of nonfunding in other areas, but in nowise contemplated a private cause of action for money judgment.

· The funding of Michigan trial courts has proven to be a difficult task because of diverse interests at stake in each locality. In large part, the wording of the statute reflects this difficulty, which, from reading the entire statute, resulted in a compromise. See House Legislative Analysis, SB 1106 and HB 5630. While we readily concede that this remedy was not sought or implemented and that the Legislature thus failed to follow through on its announced intention,[14] that does not change the status of a private cause of action for money judgment—the remedy provision clearly indicates an intent to preclude an action for money damages.

B

The parties rely on, when advantageous, and distinguish, when not advantageous, our decision in *Oakland Schools Bd of Ed v Superintendent of Public Instruction,* 392 Mich 613, 621; 221 NW2d 345 (1974). There we addressed the intent of the Legislature in enacting § 16a(5)[15] of the school aid act:

[14] Opponents of this legislation apparently believed this compromise would prove illusory, see House Legislative Analysis, SB 1106 and HB 5630, March 6, 1981. We express no opinion regarding any judicial means to compel the enforcement of such a remedy.

[15] In 1971, the Legislature voted to amend this section, but the Governor's veto prevented it from becoming law. The suit sought mandamus under the old statute, which plaintiffs contended remained intact after the veto. The 1971 amendment would have provided the following:

From the amount appropriated in section 1 there is appropriated a separate fund of $400,000.00 for the purpose of providing funds to intermediate districts which operate data processing programs, using a service fee method of financing on a coopera-

Beginning in 1971-72 from the amount appropri-
ated in section 1 there is appropriated a separate
fund of $400,000.00 for the purpose of providing
funds to intermediate districts which operate data
processing programs, using a service fee method of
financing on a cooperative basis with local school
districts. [1970 PA 100.]

Reviewing various constitutional implications of
the statute, we held that mandamus for appropria-
tion of those funds was not available because that
statute reflected a mere *"intention to appropri-
ate."*[16] *Id.* at 620 (emphasis added).

In this case, it is unnecessary to adopt or reach
the analysis in *Oakland.* In other words, we need

tive basis with local school districts as approved by the superin-
tendent of public instruction.

[16] Although the Michigan Legislature may at times place au-
thorization provisions and appropriation provisions in the same
bill, we believe that any provision that does not take initial
effect during the ensuing fiscal year is intended to function
only as an authorization—*an intention to appropriate.* The
dynamics of the budget change from year to year on the basis
of the revenues derived and the expenditures required by the
people of Michigan. Responsible fiscal policy consequently also
requires a yearly reassessment of revenues, spending goals and
priorities.

The Michigan Constitution of 1963 brought to this state new
measures designed to require an annual review of the budget
and to provide for annual fiscal accountability in both the
legislative and executive branches. See, Const 1963, art 4, § 31
and art 5, § 18 and the "Convention Comment" accompanying
each section. To construe 1970 PA 100, § 16a(5) as urged by
appellee would violate the spirit if not the letter of these
constitutional provisions. The Legislature would be, in effect,
appropriating in advance of its ability to forecast available
revenues and would thereby be unable to match revenue with
appropriations as required by Const 1963, art 4, § 31. In addi-
tion, such prospective appropriations would force the Governor
to approve or veto the expenditure far in advance of his ability
to assess the fiscal needs of the state. See, generally, Const
1963, art 5, §§ 18 and 19. We do not believe that the Legisla-
ture intended either of these results.

In sum, we believe that the most reasonable construction
that can be made of the legislative intent behind the enactment

not decide whether the Legislature has the power to bind fiscally subsequent Legislatures or whether a "provision that does not take initial effect during the ensuing fiscal year is intended to function only as an authorization—an intention to appropriate." *Id.* at 620. The specific remedy in § 9947(2) clearly precludes a private cause of action for money judgment.[17] Hence, no private cause of action exists, regardless of an intention to appropriate.

For the same reason, this Court's decision in *City of Adrian v Michigan,* 420 Mich 554; 362 NW2d 708 (1984), is not applicable. In *City of Adrian,* the Court interpreted a statute providing that the Legislature would appropriate funds to reimburse local governments for overtime paid to firefighters. The plaintiffs sought a money judgment, which, under the facts of the case,[18] we found to be enforceable.

Unlike the *City of Adrian* statute, the instant law, on its face, does not contemplate a private cause of action for money judgment because it specifically provides a different remedy. While there are times when we may imply a cause of action, a plain reading of this statute precludes that analysis in this case. The reality of this difficult issue of court funding is political postur-

of 1970 PA 100, § 16a(5) is to find that this section expressed only a *desire* to appropriate in the future. This construction avoids any conflict with the constitutional requirements binding upon both the Legislature and the Governor, and, in our opinion, furthers the comity between these two branches that is necessary for the responsible functioning of the state government. [*Oakland* at 620-621 (emphasis added).]

[17] See, generally, *Phillips v Butterball Farms Co, Inc (After Second Remand),* 448 Mich 239; 531 NW2d 144 (1995); *Gardner v Wood,* 429 Mich 290, 302, 304; 414 NW2d 706 (1987); *Cort v Ash,* 422 US 66, 78; 95 S Ct 2080; 45 L Ed 2d 26 (1975).

[18] The state never appealed the finding whether it had an obligation under the statute to reimburse the plaintiffs. We found that the state waived this contention. *Id.* at 563-564.

ing. The remedy provided by statute is the only remedy available. Not every perceived wrong necessarily has a judicial remedy—this is one of those situations, revealed through the plain language of the statute.

## III

### A

Plaintiffs also contend that regardless of the effect of former § 9947, the Michigan Constitution requires the state to fund trial court obligations. They rely on three provisions of the constitution. First, they assert that the "one court of justice" language of Const 1963, art 6, § 1 mandates this funding:

> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

Second, they maintain that state funding is required by art 9, § 1, which provides:

> The legislature shall impose taxes sufficient with other resources to pay the expenses of state government.

Finally, they argue that the provision of art 9, § 3, regarding uniformity of taxation makes it impermissible to impose the burden of court finance on local funding units. That section provides:

> The legislature shall provide for the uniform

general ad valorem taxation of real and tangible
personal property not exempt by law. The legisla-
ture shall provide for the determination of true
cash value of such property; the proportion of true
cash value at which such property shall be uni-
formly assessed, which shall not, after January 1,
1966, exceed 50 percent; and for a system of equal-
ization of assessments. The legislature may pro-
vide for alternative means of taxation of desig-
nated real and tangible personal property in lieu
of general ad valorem taxation. Every tax other
than the general ad valorem property tax shall be
uniform upon the class or classes on which it
operates.

B

Like the trial court, the Court of Appeals[19] re-
jected plaintiffs' contention that state funding was
mandated by the concept of "one court of justice."
The Court said:

Art 6, §1 creates "one court of justice" and
incorporates the concept that the state has a sin-
gle court with several divisions, each responsible
for a certain level of judicial administration. 1
Official Record, Constitutional Convention 1961, p
1241. However, the constitutional provision itself
contains no mandate that under the concept of
"one court of justice" the state is fiscally responsi-
ble for the trial courts. Nor does the record of the
Constitutional Convention debate on art 6, §1
reveal any suggestion that the concept, as incorpo-
rated into the constitutional provision, requires
that the state assume responsibility for funding
Michigan trial courts. Rather, the provision was

[19] As noted, each judge on the Court of Appeals panel wrote a
separate opinion on the statutory issue. However, the panel was
unanimous on the constitutional issue. The analysis summarized here
is taken from the opinion by Judge MAUREEN P. REILLY, with which
Judges SAWYER and P. J. CLULO concurred.

primarily administrative, defining the organizational structure of the judicial system. The record of the constitutional convention reflects that the concern of the majority of the delegates was the need for supervision and coordination of lower courts and that the concern of the minority of delegates was the increased power of the supreme court at the expense of the autonomy of the lower courts. 1 Official Record, Constitutional Convention 1961, pp 1241-1256.

Further, the Court of Appeals concluded that even if the courts are regarded as part of state government, it is permissible to require them to be funded by local units:

> Plaintiffs' argument that trial courts are subsumed into state government pursuant to art 6, § 1, and, therefore, the state is required to fund the operation of those courts pursuant to art 9, § 1 ignores the decisions of the Michigan Supreme Court in *Hart v Wayne Co,* 396 Mich 259, 272; 240 NW2d 697 (1976) and *Wayne Circuit Judges v Wayne Co,* 383 Mich 10; 172 NW2d 436 (1969). In *Hart,* the Court recognized that Detroit Recorder's Court was a state court performing a state function, and that funding of the state judicial system is a legislative function. However, the Court determined that the Legislature may charge the counties for public services provided by the courts as a fair way of apportioning public expenses. *Hart, supra* at 272. See also *Wayne Circuit Judges, supra* at 28.

Finally, the Court of Appeals said that the uniformity of taxation principle of art 9, § 3, applied to the uniformity of rates and assessments and that plaintiffs merely had demonstrated that different counties have different property values, millage rates, and levels of judicial expenditures. The Court explained:

We also reject plaintiff's argument that the state's failure to pay for the operational expenses of its trial courts results in a disparate "judicial tax burden" from county to county and therefore violates the uniformity of taxation clause of Const 1963, art 9, § 3. We agree with defendants that plaintiffs have not demonstrated a violation of the uniformity of taxation clause. The constitutional requirement of uniformity of taxation is concerned with uniformity of rates and assessment. *Molter v Treasury Dep't,* 193 Mich App 421, 429; 484 NW2d 702 (1992), affirmed in part and reversed in part on other grounds 443 Mich 537; 505 NW2d 244 (1993). As defendants have noted, the data presented by plaintiffs does not demonstrate a lack of uniformity in assessment of taxes. Rather, plaintiffs have demonstrated that different counties have different property values, different millage rates, and different levels of judicial expenditures. Plaintiffs have presented no authority to support their argument that art 9, § 3 requires that all counties in the state have the same millage rate. See, e.g., *East Grand Rapids School Dist v Kent Co Tax Allocation Bd,* 415 Mich 381, 396; 330 NW2d 7 (1982).

c

We agree with the Court of Appeals that none of the constitutional provisions relied on by plaintiffs requires the state to pay the entire cost of trial court operations. While strong arguments can be made that state funding would be a more desirable system of court financing, it is for the Legislature to determine whether to adopt such a system.

With respect to the phrase, "one court of justice," in Const 1963, art 6, § 1, we agree with the Court of Appeals that the purpose of adding the phrase was not to change the traditionally local character of the courts to one totally controlled

and funded by the state. Rather, as the Court of Appeals said, the focus was on administration of the court system, with the debate of the Constitutional Convention dealing primarily with the degree of authority that would be given the Supreme Court in overseeing the operation of the lower courts. There is no suggestion in the debates, or in the Address to the People, that there was an intention to change the method by which the courts are funded.[20]

Despite the fact that the courts have always been regarded as part of state government,[21] they

---

[20] The committee report on the proposal said:

After 3 months of hearings and another of discussion, the committee members are in general agreement that Michigan's judicial system is basically sound. The committee, therefore, took the approach that the deficiencies of the system should be corrected, but the structure should be maintained. A study of systems available in other comparable states confirmed this opinion.

The proposed section makes 3 basic changes. It creates "a court of justice." This is primarily an administrative matter, but incorporates the concept that we have a single court, with several branches, each devoting its attention to a certain level of judicial administration. This is the modern concept originally propounded by Dean Roscoe Pound, and since adopted in most new state constitutions. The language comes from the model judicial article of the American bar association. [1 Official Record, Constitutional Convention 1961, p 1241.]

The relevant section of the Address to the People provided:

This is a revision of Sec. 1, Article VII, of the present constitution. It provides three basic changes in the existing state judicial branch:

1. It creates a "court of justice," incorporating the concept that the state has a single court with several divisions, each devoting its attention to a certain level of judicial administration. [2 Official Record, Constitutional Convention 1961, p 3384.]

[21] See, generally, *Judges of the 74th Judicial Dist v Bay Co*, 385 Mich 710; 190 NW2d 219 (1971); *Frederick v Presque Isle Circuit Judge*, 439 Mich 1, 15; 476 NW2d 142 (1991); *Hart v Wayne Co, supra*. Indeed, in the Constitutions of 1850 and 1908, the courts were characterized as the "judicial department" of the state government.

have operated historically on local funds and resources. An unbroken line of cases stretching back 130 years recognizes the practice of imposing the costs of operating the courts on local funding units.[22] In *People ex rel Schmittdiel v Wayne Co Bd of Auditors,* 13 Mich 233, 235 (1865), the dispute concerned payment of the salary of the clerk of the police court in Detroit. Wayne County objected to paying on the ground that the constitution gave it exclusive power to prescribe and fix the compensation for services rendered for the county. We rejected the application of that principle, stating:

> Upon an examination of our state policy, before and since the adoption of the new constitution, it will be found that many charges have been laid on counties, as such, where no benefit accrued to them in their corporate capacity, but where it was, doubtless, deemed a fair way of apportioning the public expenses.

Similarly, in *Stowell v Jackson Co Bd of Supervisors,* 57 Mich 31, 34; 23 NW 557 (1885), regarding payment of the cost of sequestering jurors, we said:

> Of the power of courts to incur similar expenses generally for court exigencies, so as to bind the county, without statute, the authorities are quite clear. *People v Stout,* 23 Barb 349 [(NY, 1856)]; *McCalmont v Allegheny Co,* 29 Pa 417 [(1857)]; *Supervisors of Crawford Co v Le Clerc,* 4 Chand 56 [(Wis, 1851)]; *White v Polk Co,* 17 Iowa 413 [(1864)].

Const 1850, art 6; Const 1908, art 7. Moreover, early statutes specifying the salaries of "state officers" included trial court judges, e.g., 1871 PA 173.

[22] Both the 1850 and 1908 Constitutions included language very similar to Const 1963, art 9, § 1 regarding legislative imposition of taxes sufficient "with other resources" to pay the "expenses of state government." Const 1850, art 14, § 1; Const 1908, art 10, § 2.

Our own decisions have always held that while the supervisors are, under the Constitution, exclusive judges of the propriety of services for the county, yet they have no such exclusive power over those county charges that are not for such services; and we have also held that the expenses of justice are incurred for the benefit of the State and only charged against the counties in accordance with old usage, as a proper method of distributing the burden. *People v Auditors of Wayne Co,* 13 Mich 233 [(1865)].

Finally, in *Hart v Wayne Co, supra,* we reviewed whether Wayne County could be required to pay part of the salaries of judges of the Recorder's Court for the City of Detroit. We found imposition of those costs on the county permissible, stating:

Recorder's court is a state court performing a state function, not a local function. Funding of the state judicial system is a legislative function. And, as noted in *Schmittdiel* and *Robison* [*v Wayne Circuit Judges,* 151 Mich 315; 115 NW 682 (1908)], it is not unusual to charge the counties for these services as a fair way of apportioning public expenses.[23] [*Id.* at 272.]

As indicated by statements in such cases as *Stowell, Schmittdiel,* and *Hart,* the Legislature historically has allocated the burdens of financing aspects of court operations to various governmental units. With regard to judges' salaries, the Legislature sometimes provided for the use of state

---

23 See also *Wayne Circuit Judges v Wayne Co, supra,* dissenting opinion adopted as opinion of the Court on rehearing, 386 Mich 1; 190 NW2d 228 (1971), *Judges of the 74th Judicial Dist v Bay Co, supra, Livingston Co v Livingston Circuit Judge,* 393 Mich 265; 225 NW2d 352 (1975), and *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co,* n 12 *supra. Frederick v Presque Isle Circuit Judge, supra,* 439 Mich 15.

funds.[24] In other instances, the cost was to be borne by the counties, even though the statute set the salary.[25] In still other cases, a hybrid system was used, with the total amount of salary set by statute, part paid by the state, and the remainder by a local unit.[26]

In some statutes, local units were specifically directed to pay the salaries of certain court employees, e.g., 1895 PA 113 (clerk of Third Circuit Court); 1875 PA 49 (clerk of the Superior Court of Grand Rapids); 1897 PA 183 (circuit court stenographers). In others, for example when it created the district court, the Legislature placed the burden of funding the court on local units. MCL 600.8104; MSA 27A.8104. In yet other situations, this local funding was extended to additional aspects of court operations, such as providing facilities,[27] paying the expenses of visiting judges assigned by the Governor,[28] paying for transcripts ordered by courts in criminal cases,[29] or providing books, stationery, and fuel used by the probate court.[30]

The widespread acceptance of the principle of funding most trial court expenses through local funding units has continued until today. See, for example, MCL 600.591; MSA 27A.591, adopted as part of 1980 PA 438:

> (1) Except as otherwise provided by law, the chief judge of the circuit court in each judicial circuit shall appoint the employees of the circuit

---

[24] E.g., 1871 PA 173 (circuit judges).

[25] E.g., 1859 PA 187 (probate judges).

[26] E.g., 1875 PA 49 (Superior Court of Grand Rapids); 1883 LA 326, ch 12, § 6, p 638 (Recorder's Court of the City of Detroit).

[27] E.g., 1889 PA 75.

[28] 1895 PA 152.

[29] 1897 PA 183.

[30] 1873 PA 165.

court in each judicial circuit and fix their compensation within appropriations provided by the county board of commissioners of the county or counties comprising the judicial circuit.

(2) Compensation of the employees of the circuit court in each judicial circuit shall be paid by the county or counties comprising the judicial circuit.

The Legislature has stopped short of placing the entire burden of court financing on local funding units. However, its repeated actions in charging certain expenses to the local units of government confirms this Court's statement in *Stowell:*

[T]he expenses of justice are incurred for the benefit of the State and only charged against the counties in accordance with old usage, as a proper method of distributing the burden. [*Id.* at 34.]

Given this practice, we hold that funds provided by local units constitute "other resources" within the meaning of Const 1963, art 9, § 1 and thus may be considered by the Legislature in satisfying its constitutional obligation to fund governmental activities.

D

Finally, plaintiffs maintain that local financing of the courts violates Const 1963, art 9, § 3, the provision regarding uniformity of taxation. They contend that funding by local units results in differing levels of taxation in different jurisdictions for the purpose of financing the courts.

While the statistics on which the funding units rely arguably are not part of the record, it would certainly not be surprising to learn that varying levels of taxation are devoted to court funding in different jurisdictions. That fact, however, would

not constitute a violation of art 9, § 3. The Court of Appeals correctly noted that the constitutional requirement is for uniformity of rates and assessment. The fact that there are differing property values, millage rates, and levels of judicial expenditures is not controlling. The principle of uniformity of taxation is that the uniformity must be coextensive with the territory to which it applies. Thus, it is only necessary that a county or city tax be uniform throughout that county or city. *Titus v State Tax Comm,* 374 Mich 476; 132 NW2d 647 (1965).

## IV

Until the Legislature, the counties, and the courts arrive at a plan for more efficient and effective court funding, difficulties like that presented in this case will arise. Indeed, the numerous cases addressing conflicts about court funding, and the controversy surrounding the instant case, demonstrate the need for continuing efforts by the judicial, legislative, and executive branches to reform the state's system of court funding. We conclude, however, that former MCL 600.9947; MSA 27A.9947, precludes plaintiffs from maintaining a private cause of action for money judgment and that the Michigan Constitution does not obligate the state to fund the entire cost of trial court operations. Accordingly, we remand to the trial court for entry of judgment in favor of defendants.

BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, MALLETT, and WEAVER, JJ., concurred with RILEY, J.